Cullen Reed HARRIS and Sandra Kay HARRIS *v.*
STATE of Arkansas

CR 84-121                                      681 S.W.2d 334

Supreme Court of Arkansas
Opinion delivered December 17, 1984

*James E. Davis,* for appellants.

*Steve Clark,* Att'y Gen., by: *Leslie M. Powell,* Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. We granted the petition of Cullen and Sandra Harris to review the decision of the Court of Appeals [See *Harris and Harris* v. *State,* 12 Ark. App. 181, 672 S.W.2d 905 (1984)], to decide whether an appellant who has challenged the sufficiency of the evidence, along with other assignments of error, is entitled to have that issued decided when the case is reversed and remanded on other grounds. The Court of Appeals declined to address the

sufficiency argument since the case was reversed for procedural errors. That position was reaffirmed by a supplemental opinion denying appellants' petition for rehearing. (12 Ark. App. at 189). We take a different view from the Court of Appeals, and, accordingly, we reverse.

Appellants, Cullen and Sandra Harris, were tried and convicted of manufacturing a controlled substance. They argued five points for reversal before the Court of Appeals, which found two reversible errors: 1) Failure of the trial court to grant a continuance to appellants when the state produced a witness for an out-of-court identification of one of the appellants, contrary to information supplied to the defense in pre-trial discovery; 2) refusal by the trial court to grant a mistrial when the prosecutor argued outside the record.

In their petition for rehearing, appellants contended that under *Burks* v. *United States,* 437 U.S. 1 (1978), the Arkansas Court of Appeals should have considered their challenge to the sufficiency of the evidence prior to considering other allegations of error.

In *Burks* the United States Supreme Court reconsidered its position with respect to a retrial when a case was reversed because of insufficiency of the evidence. The Court held the double jeopardy clause precluded a second trial when conviction in a prior trial was reversed solely for lack of evidence. For the purpose of determining whether the double jeopardy clause precluded a second trial after the reversal of a conviction, a reversal based on the insufficiency of the evidence was to be distinguished from a reversal for trial error. The court found that in holding the evidence insufficient to sustain guilt, an appellate court determines that the prosecution has failed to prove guilt beyond a reasonable doubt. Thus, it would defeat the purpose of the double jeopardy clause if the prosecution were afforded a second opportunity to supply evidence it had failed to muster in the first trial. We find under *Burks* the general rule would, as appellants submit, require a review of the sufficiency of the evidence prior to the consideration of trial errors.

Initially we point out that under *Burks* the sufficiency of the evidence should be reviewed even if other arguments are raised. The essence of the reasoning in *Burks* is based on the premise the prosecution has had one fair opportunity to offer whatever proof it could assemble and should not be given a "second bite at the apple." Because of unfortuitous errors by the trial court and the defendant's right to object to those errors, the defendant should not be precluded from a review of the sufficiency or, in the alternative, forced to gamble entirely on the sufficiency issue by electing to forego all other objections. For an appellate court to avoid the argument by reversing on other grounds would ignore the protection intended by the double jeopardy clause as interpreted in *Burks*. We find no cases in disagreement with this conclusion, and see *United States* v. *Palzer,* 731 F.2d 1848 (11th Cir. 1984).

The one distinction from the above cases raised in appellants' argument is that the sufficiency review brings up consideration of admissible evidence. The only reason this distinction has arisen is because the Court of Appeals did not consider the sufficiency question first and since evidentiary error was found, it is clear when considering the sufficiency of the evidence we would be including a consideration of otherwise inadmissible evidence. Disregarding other possible trial errors to review the sufficiency first does not present this dilemma. Were we not to make such a review, the alternative is to avoid the sufficiency argument by remanding for retrial on the other grounds. But unless the reasons for a new trial are defeated by reviewing the sufficiency first, including the inadmissible evidence, generally the review should be granted. That is what *Burks* requires.

The reasons for retrial, as opposed to dismissal on reversible error, were stated in *Burks*. The opinion notes the distinction between trial error and evidentiary insufficiency, the former not barring retrial under the double jeopardy clause:

["Trial error does not constitute a decision to the effect that the government has failed to prove its case and implies nothing with respect to guilt or innocence of

the defendant."] Rather it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e.g. incorrect receipt or rejection of evidence, incorrect instructions or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished. *Burks* at 15.

The *Burks* court points out if acquittal is granted on the sufficiency argument the prosecution cannot complain of prejudice for it has been given one fair opportunity to offer whatever proof it could assemble. *Id.* at 16.

Although trial error does not constitute a decision that the state has failed to prosecute its case, neither does it preclude such a finding. The basis for retrial when there has been trial error would not be defeated by a decision to consider the sufficiency, *including* any erroneously admitted evidence, before considering reversal on other grounds. The defendant is not prejudiced by that method. He has as strong an interest in being acquitted by a review of the sufficiency as he does in having a new trial free from error. Neither is the prosecution prejudiced by such a determination, as it has had at least a fair opportunity to offer whatever proof it could assemble. It is not prejudiced by its reliance on the trial court's erroneous ruling as the reviewing court would include that evidence in its deliberation. The review should be granted, therefore, because it is consistent with the rationale of *Burks:* "The double jeopardy clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. This is central to the objective of the prohibition against successive trials." *Burks* at *11.* "[T]he purposes of the clause would be negated were we to afford the government an opportunity for the proverbial 'second bite at the apple.' " *Id* at 17.

Turning to the case before us, we approach sufficiency of the evidence in the light most favorable to the appellee

and the judgment is affirmed if there is a finding of substantial evidence to support the verdict. Substantial evidence. must do more than create a suspicion of the existence of the fact to be established and must be of sufficient force and character as to compel a conclusion one way or the other with reasonable and material certainty. It must induce the mind to pass beyond a suspicion or conjecture. *Coleman* v. *State,* 283 Ark. 359, ___S.W.2d___ (1984).

A summary of the evidence includes these facts: In February, 1982, when an owner of a self-storage rental unit detected chemical odors, the police investigated and confiscated a van stored in the unit. In the van were most of the chemicals and equipment used in the manufacture of metamphetamine, a controlled substance, and a trace of metamphetamine was found in three containers. An expired vehicle registration in the name of Sandra and Cullen Harris was found in the van. The record is not entirely clear, but either one or two fingerprints of Cullen Harris were found on two different articles in the van. No fingerprints of Sandra Harris were found but there was evidence that she had ordered costly chemicals from a chemical supply house, and she was identified as having been with an individual who made several purchases from another chemical company. While these circumstances might create suspicions the appellants were involved in the manufacturing process, the evidence does not compel the conclusion that appellants were manufacturing metamphetamine.

The only significant connection between the Harrises and the manufacturing of the metamphetamine was their ownership of the van, but other circumstances render even that proof doubtful as to its probative value. Had the van been found under other circumstances it might be possible to reach a more definitive conclusion, but there are too many indications that others had access to the van, thus casting doubts on the appellants' access and control of the vehicle: the van's registration had expired almost a year earlier, the storage unit was rented in someone else's name; the owners of the rental units could not identify the appellants as having had anything to do with the rental procedure and

during the several months of storage they had never seen appellants at the storage unit; of approximately one hundred items in the van tested for fingerprints, only one and possibly two prints were identified as those of Cullen Harris; none were found belonging to Sandra Harris and of many other prints found there was at least one other set and possibly as many as ten prints belonging to other individuals; a box top from one of the chemical supply houses found in the van had an invoice number stamped on it which was traced to an order made by a Bill Jenkins and which was to be picked up by a J.T. Thompson.

Aside from the fact that others had access to the van, appellants' connection with any of the manufacturing apparatus and its operation was not shown. Other than the expired vehicle registration, Cullen Harris' only connection with the manufacturing process was one or two fingerprints on articles in the van, and it was not shown that those articles were used in the manufacturing process.

Evidence of Sandra Harris' connection is even less convincing. None of her fingerprints were found on any of the tested items in the van, and the other evidence produced by the state failed to establish any relationship to the manufacturer. Although a Sandra Harris was shown to have purchased chemicals from a supply house, there was no proof that it was the appellant, Sandra Harris. In any case, the chemicals purchased were not tied in any way to the manufacturing process — neither by the chemist's testimony concerning the necessary ingredients nor by any of the chemicals found in the van. The fact that she was with someone who purchased chemicals is lacking in probative value, as the chemicals and equipment purchased were not identified as any of those found in the van.

The connection of the appellants with the manufacturing process itself is further attenuated by the testimony of the state's chemical expert that there was no way to determine from the traces of the chemical residue how long it had been since the manufacturing process had taken place. He testified the process would take several days to complete and required a large room, much bigger than the space

inside the van or the storage unit itself because of the necessary ventilation. From the chemist's testimony it appears impossible the process could ever have been accomplished inside the van or even in the storage building, and therefore, the time and place of manufacture were left to speculation, with no connection made to the appellants.

This case is not unlike *Pollard v. State,* 264 Ark. 753, 574 S.W.2d 656 (1978) where the defendant had been convicted of manufacturing marijuana by growing it in fields. There were a number of circumstances that tended to point to Pollard's involvement, but nothing to show a legally sufficient connection. We said, "Certainly, there is plenty of evidence that something may have been going on of a suspicious nature. However, when we apply the law to the facts in this case, where is the evidence . . . that Pollard planted or cultivated this marijuana on the island? It is simply not there." That description of the proof is equally applicable to this case. The equipment found indicated it had been used for the manufacture of metamphetamine but at some location other than the van. The expired registration indicated the appellants were the owners of the van, but all other evidence pointed to individuals other than the appellants as being involved in the manufacturing process. Nothing else of substance was produced to show appellants' involvement. The evidence of guilt does not meet the test of substantial evidence.

The case is reversed and dismissed.