Edmond W. PARETTE *v.* STATE of Arkansas

CR 88-128                                            786 S.W.2d 817

Supreme Court of Arkansas
Opinion delivered March 26, 1990
[Rehearing denied April 30, 1990.]

*Fredye Long Eckhart*, for appellant.

*Steve Clark*, Att'y Gen., by: *Theodore Holder*, Asst. Att'y Gen., for appellee.

OTIS H. TURNER, Justice. The appellant raises six points for reversal in this appeal from his conviction on a charge of possession of marijuana with intent to deliver. His arguments are unpersuasive, and we affirm the judgment.

Edmond (Ned) Parette, the appellant, and his wife, Elizabeth (Liz) Parette, lived together with their infant child in a single-family residence in Fayetteville, Arkansas, until November, 1985, when the appellant moved out. He filed a suit for divorce in May, 1986.

Mrs. Parette remained in the residence until September, 1986, when she surrendered the house and key to the appellant. (The appellant's father was the owner of the house.) The house remained unoccupied, although both husband and wife had left various items of personal property inside.

Sometime during the fall of 1986, Liz Parette had a chance

meeting with a high school acquaintance, Harry Perry, a police officer for the city of Springdale, Arkansas. She testified that she told the officer that she believed her former husband was involved in "dope."

In October, 1986, Liz Parette, wishing to obtain some of her possessions from the house, met with her former neighbor, Ann Hannah, and, with her assistance, entered the house through a utility-room window. Once inside, she smelled the odor of marijuana and discovered a large amount of the substance in trash bags stored in a closet, together with scales, plastic bags, and other items, which she identified as the property of Ned Parette.

The two women then took the bags and the other items of personal property to Mrs. Hannah's house. Mrs. Parette then phoned her friend, Officer Harry Perry. She subsequently gave the marijuana and other items taken from the house to Perry, who delivered all of the property to the Springdale Police Department. In March, 1987, the appellant was arrested and charged with possession of a controlled substance with intent to deliver.

Liz Parette was ultimately granted immunity from prosecution. At her former husband's trial, she testified that the appellant had been involved in marijuana trafficking during the course of their marriage. A pretrial motion by the defense to suppress the physical evidence was denied. Following a trial by jury, the appellant was convicted and sentenced to ten years imprisonment and fined $20,000.

The appellant argues six issues for reversal:

I. The state failed to meet its burden of proving the validity of the warrantless search.

II. The appellant's former wife should not have been permitted to testify against him.

III. The trial court erroneously permitted evidence from a surprise witness after the state admitted a discovery violation.

IV. The trial court prejudicially restricted cross-examination of a material witness.

V. The trial court erroneously excluded the testimony of a

defense witness.

VI. The trial court erroneously denied a directed verdict for the appellant.

After a careful review, we hold that the trial was without prejudicial error, and we affirm.

I.

The appellant made a pretrial motion to suppress the evidence taken from the house by Liz Parette and Ann Hannah on the basis that it had been obtained in violation of the Fourth Amendment to the United States Constitution.

Pertinent testimony indicates that the appellant and Liz Parette lived together in the house; that the appellant moved and Liz remained; that Liz then moved but left certain items of personal property in the house, some of which belonged to her estranged husband, some to her, and some to their infant child. Thereafter, the appellant had access to the house, owned by his father, and frequented it on numerous occasions, but neither the appellant nor Mrs. Parette occupied the premises.

The appellant's motion to suppress raised two issues to be resolved by the trial court: first, whether the appellant had standing to challenge the seizure of the evidence; and second, whether the two women were acting as private citizens or as agents of the police due to Liz Parette's relationship with Officer Perry and her earlier conversation with him concerning a belief that appellant was involved with "dope."

It is well settled that one must have standing in order to complain of an alleged illegal search and seizure. *Rakas* v. *Illinois*, 439 U.S. 128 (1978); *Ross* v. *State*, 300 Ark. 369, 779 S.W.2d 161 (1989). There was no showing that the appellant owned or leased the house or maintained or had a right to maintain control of the premises; thus, the trial court was correct in holding that the appellant lacked standing to complain. Also, the appellant acknowledges that the search and seizure restraints found under the provisions of both the state and federal Constitutions operate as restraints upon the government and its agents rather than upon private individuals. *Smith* v. *State*, 267 Ark. 1138, 594 S.W.2d 251 (Ark. App. 1980). Only when it is

established that the private individual acted at the direction of a law enforcement agency or officer can he or she be considered an arm of the government. *Houston* v. *State*, 299 Ark. 7, 771 S.W.2d 16 (1989). This question was properly before the trial court, who was able to evaluate the evidence and to resolve any conflicts which might have existed. *Atchison* v. *State*, 298 Ark. 344, 767 S.W.2d 312 (1989). We find that the trial court's decision was not against a preponderance of the evidence.

## II.

The appellant next argues that his ex-wife should not have been permitted to testify against him.

In advancing this argument, the appellant relies upon a series of legislative enactments, decisions of this court, and promulgations of procedural rules by this court under its constitutionally-granted powers.

Act 14 of 1943, previously codified as Ark. Stat. Ann. §§ 43-2019 — 2020, prohibited the introduction by the opposing party of any testimony by one spouse against the other in a criminal case. In 1975, the legislature established rules of evidence by legislative act. Rule 504 changed the prior rule to prohibit the testimony of one spouse against the other only with respect to confidential communications. On October 13, 1986, this court held that the act changing the rule was invalid and then adopted the Rules of Evidence (including Rule 504) by per curiam order. *See Ricarte* v. *State*, 290 Ark. 100, 717 S.W.2d 488 (1986).

The appellant's argument is controlled by our holding in *Smith* v. *State*, 291 Ark. 163, 722 S.W.2d 853 (1987). There we specifically held that where the change in law between the commission of the crime and the trial did not make any *fact* admissible to prove the crime which fact would not have been admissible at the time of the commission, but only made *testimony* admissible which would not have been previously admissible, it is an evidentiary matter, not one of substantive law, and as such, is within the court's rule-making authority. *See Curtis* v. *State*, 301 Ark. 208, 783 S.W.2d 47 (1990).

The trial court properly allowed Liz Parette to testify against her former husband.

## III.

The appellant contends that reversal is required due to the admission of testimonial and physical evidence of a surprise witness after the state admitted a discovery violation.

In response to discovery requests by the appellant, the state listed as a witness an employee of the United Parcel Service who had taken the appellant's fingerprints, apparently as a part of an application for employment. The listed witness was going to be used *only* for the purpose of establishing that the prints on the card were the prints of the appellant. During the course of trial, the state found that the listed witness was unavailable and so elected to call a deputy sheriff who could identify the appellant's fingerprints on the card made at the time of the arrest. Neither the listed witness nor the substituted witness were to be called for the purpose of comparing the record or "card" prints with the prints lifted from the bags of marijuana—that evidence was provided by a listed expert. When informed of the substitute witness, counsel for the appellant objected. Although the objection was overruled, the court gave counsel for the appellant thirty minutes to confer with the witness outside the courtroom prior to his testifying.

The witness—whether listed or substituted is immaterial under these circumstances—was called only for the limited purpose of laying a foundation for the testimony of the fingerprint expert. Though counsel for the appellant argues prejudice, there was nothing before the trial court or this court on appeal to indicate *how* the substitution might have been prejudicial. The appellant's attorney asserts that he was prepared to "gut" the listed witness but does not elaborate. The ingenuity necessary to "gut" a witness called only for the limited purpose of identifying a fingerprint card would be useful knowledge and should have been explained.

Even if this substitution of witnesses amounted to a discovery violation, so long as no real prejudice to the appellant ensued, reversal is not warranted. *Caldwell* v. *State*, 295 Ark. 149, 747 S.W.2d 99 (1988).

## IV.

The appellant next argues that the trial court committed prejudicial error in restricting the appellant's cross-examination of Officer Perry.

During this cross-examination, the appellant's attorney asked the witness if he had taken an oath to uphold the law. Perry answered affirmatively. Counsel then inquired whether, at any time during his employment with the Ouachita County Sheriff's Office, he had violated the law. The state objected, and the defense proffered that Perry had constructed and set off a "bomb" in a tree on the University of Arkansas campus during a gay rights march. This act resulted in a reprimand and termination of employment by the sheriff's office. The state countered that the evidence had nothing to do with truthfulness or veracity as required by *Rhodes* v. *State*, 276 Ark. 203, 634 S.W.2d 107 (1982). The court sustained the state's objection.

Arkansas Rules of Evidence Rule 608(b) provides that specific instances of conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of a crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness concerning his character for truthfulness.

We have interpreted this rule and limited its application to instances where the inquiry on cross-examination concerns misconduct "clearly probative of truthfulness or untruthfulness." *Rhodes* v. *State*, 276 Ark. 203, 634 S.W.2d 107 (1982). We do not view the inquiry as relating to misconduct clearly probative of untruthfulness as argued by the appellant. The record indicates that the witness's misconduct resulted in a charge of discharging fireworks within the city. The appellant attempts to make a conceptual leap backward from this petty misdemeanor, not itself relating in any way to truthfulness or untruthfulness, to the policeman's oath and then forward to the standard established in *Rhodes*. There is simply no analogy between the *Rhodes* situation and that ruled upon the court in this case. We decline to permit the appellant to bootstrap, by reverse analogy, this

situation to *Rhodes*, and we refuse to hold that the trial court abused the discretion granted to him under the rule.

The appellant also contends that the evidence was admissible under A.R.E. Rules 404 and 405. Rule 404 provides that character evidence of a witness is not admissible to prove that he acted in conformity therewith on a particular occasion, except as provided for in Rules 607, 608 and 609, none of which applied here. Except to the extent discussed above, Rule 405 obviously refers only to the character of the accused as an essential element of the charge and has no application to this cross-examination directed to the character of a witness.

## V.

It is next contended that the trial court erred in excluding the testimony of a witness for the defense.

Kerry Burke, a witness called for the defense, was asked by appellant's attorney whether Liz Parette had changed since he first met her at college. The state objected, and the court sustained the objection "unless you [counsel for the appellant] attempt to qualify him as an expert." Counsel responded that he could not meet the requirement and continued his interrogation of the witness. During the subsequent questioning, witness Burke testified that Liz Parette had on one occasion become emotionally upset, that she "was not herself," and that she stated that she would "find a way to get" the appellant.

The record seems clear that the appellant accomplished his intended purpose with this witness and the testimony was in fact introduced. In any event, there appears no prejudice. *See Watson* v. *State*, 291 Ark. 358, 724 S.W.2d 478 (1987).

## VI.

As his last point for reversal, the appellant contends there was no sufficient evidence to sustain the verdict.

The appellant presents three sub-arguments in advancing this issue: first, that Liz Parette and the appellant were in joint possession of the house and the appellant was, at the very worst, only in constructive possession of the marijuana; second, that Liz Parette was an accomplice and the evidence corroborating her

testimony was not sufficient under the requirements of Ark. Code Ann. § 16-89-111(e) (1987); and third, the chain of custody of the contraband was defective, rendering the admission as evidence reversible error.

Only one of the three sub-arguments was raised at the trial level. The appellant moved for a directed verdict on the constructive possession issue, both at close of the state's case and when the defense rested; therefore, that issue is properly preserved and is the only one under this point that will be considered. See ARCP Rule 36.2(b); *Houston* v. *State*, 299 Ark. 7, 771 S.W.2d 16 (1989). In order to preserve an issue for appeal, that issue must be stated clearly and specifically. *Price* v. *State*, 285 Ark. 148, 685 S.W.2d 506 (1985). Only the objections raised at the trial level are deemed to be properly before this court on appeal; all others are considered waived. *Harris* v. *State*, 295 Ark. 456, 748 S.W.2d 666 (1988). Thus, only the constructive possession argument is properly before this court.

If this conviction is to be affirmed, it must be shown that the appellant possessed the marijuana. Constructive possession is a sufficient showing. Constructive possession may be implied where the contraband is found in a place immediately and exclusively accessible to the defendant and subject to his control. Where, however there is joint occupancy of premises, then some additional factor must be present linking the accused to the contraband. The state must prove that the accused exercised care, control and management over the contraband and that the accused knew that it was in fact contraband. *Plotts* v. *State*, 297 Ark. 66, 759 S.W.2d 793 (1988).

There is an abundance of evidence from which a jury could conclude that the appellant exercised control over the contraband and knew where it was. Liz Parette testified that, during their marriage, the appellant received marijuana shipments once every one or two months; that a silver trash bag introduced into evidence was used by the appellant to cover the shipments when they were received; that a canvas bookbag, plastic baggies, and a set of scales that were identified and introduced were found with the marijuana and belonged to the appellant; that the canvas bookbag was obtained at Henderson State University when she and the appellant attended college; that a red bag bearing a *Life*

magazine logo contained the appellant's contact lens case, a "cocaine chopper" and wooden hashish pipe, all of which belonged to the appellant and were found by her with the marijuana.

There is also substantial evidence from which the jury could find that the appellant had easy access to and frequented the house where the contraband was found on a number of occasions. The appellant's father owned the house, and the next door neighbor testified that she saw the appellant at the house quite often after Liz Parette moved out. This same neighbor once tried to go in the house when she saw the appellant cleaning inside. The appellant refused her admission, saying that the house was "a pit."

Suffice it to say the evidence in support of the verdict is substantial, if not overwhelming.

Affirmed.

PRICE, J., not participating.