Deryl BARGERY *v.* STATE of Arkansas

CA CR 91-103                                    825 S.W.2d 831

Court of Appeals of Arkansas
Division II
Opinion delivered March 4, 1992

*Wayne Emmons*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Ass't. Att'y Gen., for appellee.

GEORGE K. CRACRAFT, Chief Judge. Deryl Bargery appeals from his conviction of the crime of manslaughter. He contends that the finding of guilt is not supported by the evidence, and that the trial court erred in allowing certain statements of the deceased to be introduced as a dying declaration, and in excluding testimony of appellant as to his personal knowledge of the violent propensities of the victim. We find no error and affirm.

■■ When a criminal appeal challenges the sufficiency of the evidence, we consider that issue before considering any alleged trial errors. *See Harris v. State*, 284 Ark. 247, 681 S.W.2d 334 (1984). We view the evidence in the light most favorable to the State and will affirm if the findings are supported by substantial evidence. *Jones v. State*, 20 Ark. App. 1, 722 S.W.2d 871 (1987). In making this review, we do not weigh that evidence favorable to the State against any conflicting evidence favorable to the accused. *Westbrook v. State*, 286 Ark. 192, 691 S.W.2d 123 (1985).

Here, the deceased, Bruce Davis, and his identical twin, Barry Davis, Mark Sutter, and some friends, parked their vehicles in the parking lot of a filling station. Appellant, accompanied by Milton Baser, was also parked on the lot. Some difficulties arose between these two groups and Baser and Sutter began fighting.

Carolyn Maddox testified that after Baser and Sutter began fighting, appellant "jumped in" the fight. Barry Davis knocked appellant down, took a pair of "brass knucks" off his hands, and threw them to his brother, who was not taking any part in the fight. Maddox stated that she saw appellant run to his vehicle, come back with a shiny object in his hand, and make contact with Bruce Davis. Bruce then walked over to her, holding his side, and collapsed. According to her testimony, Bruce had not been involved in the fight when he was stabbed.

Barry Davis testified to similar facts leading up to the affray. He stated that after Sutter and Baser began fighting, it appeared that appellant was about to jump in to help Baser. Barry, therefore, hit appellant in the face. Barry was walking over to the area where Baser and Sutter were fighting, when he heard Carolyn Maddox shout that his brother had been stabbed and that she needed help. They then took the victim to the hospital. Two other witnesses testified that they heard appellant admit that he "thought that he had stabbed someone." The medical examiner testified that Bruce Davis died as the result of a stab wound, which had damaged his heart and lung.

Ronald Davis, father of the deceased, testified that he went to the hospital shortly after he had been notified of the event and talked with his son. He stated that Bruce said that he had been stabbed, he was scared, and "why, I don't know why he stabbed me." The court permitted that testimony, over appellant's objection, as a dying declaration. Several other witnesses testified that they had heard appellant admit that he had stabbed someone. Appellant admitted that he had stabbed the deceased but stated that he had done so out of fear that he was about to be seriously injured.

Appellant was charged with the crime of murder in the first degree. The jury returned a verdict finding appellant guilty of the lesser included offense of manslaughter. Arkansas Code Anno-

tated § 5-10-104(a) (1987) provides that a person commits manslaughter if:

> (1) He causes the death of another person under circumstances that would be murder, except that he causes the death under the influence of extreme emotional disturbance for which there is reasonable excuse. The reasonableness of the excuse shall be determined from the viewpoint of a person in the defendant's situation under the circumstances as he believes them to be; [or]
>
> . . . .
>
> (3) He recklessly causes the death of another person.

A person acts recklessly with respect to attendant circumstances or a result of his conduct when he consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of a nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the actor's situation. Ark. Code Ann. § 5-2-202(3) (1987).

Here, appellant admitted that he had the knife and inflicted the fatal wound. The jury was not required to believe his defense of justification. *McCaslin* v. *State*, 298 Ark. 335, 767 S.W.2d 306 (1989). From our review of the evidence, we cannot conclude that the jury's finding that appellant recklessly caused the death of Bruce Davis is not supported by substantial evidence.

Appellant next contends that the trial court erred in admitting as a dying declaration the deceased's father's testimony as to what the deceased said to him. The record reflects that Ronald Davis, father of the deceased, arrived at the hospital within a short time after the stabbing. He testified that his son said, "I was stabbed and I don't know why. . . . I don't know why he stabbed me."

In order to qualify as a dying declaration, the statement must be made by the declarant while believing that his death is imminent and must concern the cause or circumstances of his impending death. Ark. R. Evid. 804(b)(2). The trial court makes the preliminary determination of whether the evidence is

admissible under this rule, and on review we will reverse that determination only if there is an abuse of discretion. *Thompson* v. *State*, 306 Ark. 193, 813 S.W.2d 249 (1991). The fact that the declarant was possessed of a sense of imminent and inevitable death need not be shown by the deceased's express words, but may be supplied by inferences drawn from his condition, imminent danger, and other circumstances that indicate a sense of impending death. *Boone* v. *State*, 282 Ark. 274, 668 S.W.2d 17 (1984); *Barker* v. *State*, 21 Ark. App. 56, 728 S.W.2d 204 (1987). *See also* 4 J. Weinstein, *Weinstein's Evidence*, ¶ 804(b)(2)[1] (1991); 5 J. Wigmore, *Evidence in Trials at Common Law* § 1442 (3d ed. 1940). It is the declarant's belief in the nearness of death when he makes the statement, not the swiftness with which the death actually ensues, which is most important. *See* E. Cleary, *McCormick on Evidence*, § 282 (3d ed. 1984).

The evidence here shows that the deceased collapsed almost immediately after he was stabbed. According to the medical examiner, the wound damaged his heart and his lung. His father arrived at the Crittenden Memorial Hospital within ten minutes of being notified of the incident. He was asked what he observed when he saw his son at that time and responded:

A. Well, *they had him laying there, and they had put a tube in his side draining the blood off because he was choking on his blood.* I asked him what happened, and he said, "I was stabbed and I don't know why." Then later on *he said, "Daddy, I'm so scared."*

Q. Did he say anything else?

A. No. I said, "Son, you're going to be all right. I'm going to get you to Memphis." He said, "Why? I don't know why he stabbed me." *He kept repeating that he was scared*, and that's about all I got to talk to him.
[Emphasis added.]

The deceased was transferred to the Trauma Clinic in Memphis that evening, and he died soon thereafter. His statements that he had been stabbed and did not know why clearly referred to the cause and circumstances of his death. Considering the obvious severity of the wound as described by the medical examiner and the deceased's father, coupled with the victim's

repeated statement that he was scared, we cannot conclude that the trial court abused its discretion in admitting this testimony.

The trial court refused to allow appellant to testify about a prior altercation between one of the Davis brothers and George Crumb. Appellant proffered testimony that he was told, by Crumb, of a fight between Crumb and one of the Davis twins in which Crumb had been injured. Appellant also proffered the testimony of George Crumb. Crumb testified that on an afternoon some three months prior to the homicide, he was at the Holiday Plaza parking lot when some difficulty arose between him and "one of the Davis twins." They did not exchange any blows because someone reported that the police were coming. Before they left, one of the Davis twins issued Crumb an invitation to go to the Girls' Club and settle it. Crumb and the twins went to the Girls' Club where there was a fight. Crumb fought with and was slightly injured by one of the Davis twins, although neither Crumb nor appellant was sure which one.

The State argues that this evidence was inadmissible because it did not identify which of the Davis twins had been involved and that it was a fight by invitation, which Crumb regrets having accepted. Appellant argues that the proffered evidence was relevant to his defense of justification. He correctly points out that the defense of justification is conditioned on a reasonable belief on the part of the actor that unlawful physical force is about to be inflicted on him. He relies on the well-established rule that evidence of specific acts of violence that were directed at a defendant or were within his knowledge is admissible under Ark. R. Evid. 405(b) as being probative of what the defendant reasonably believed at the time and thus relevant to his plea of justification. *Halfacre* v. *State*, 277 Ark. 168, 639 S.W.2d 734 (1983); *Britt* v. *State*, 7 Ark. App. 156, 645 S.W.2d 699 (1983). We find no error in the trial court's ruling.

Appellant testified in his own behalf that he had been struck in the face but did not know who hit him. He stated, "They just started fighting and then I got hit. I did not see it coming." He stated that when he was hit a second time he reached into his pocket, pulled out his knife, and opened it, and he then stuck the knife in the person standing over him. At that time, appellant was totally unaware of who had hit him. He was asked if he intended

to kill the deceased, and answered:

> No, sir, I didn't. All I did was try to get *somebody* off of me. *I didn't even know it was Bruce Davis I stabbed or if it was Mark Sutter or who* until I got to the police station. *I didn't know who had hit me or who I stabbed or what.* [Emphasis added.]

Appellant's knowledge of the alleged prior instance of violence was not appellant's stated reason for his fear for his own safety at the time he struck the fatal blow. In order for prior specific acts of violence to be relevant to the issue of what the actor reasonably believed, he must not only be aware of those prior violent acts, but also be aware that his present assailant is the person who committed them. Absent any knowledge of the identity of his assailant, the proffered evidence was not relevant to the issue of his reasonable belief.

Affirmed.

COOPER and MAYFIELD, JJ., agree.