Elmer RAMEY, Jr. *v.* STATE of Arkansas

CA CR 92-478                                        857 S.W.2d 828

Court of Appeals of Arkansas
Division II
Opinion delivered June 30, 1993
[Supplemental Opinion on Denial of Rehearing August 25, 1993.]

*Cross, Kearney & McKissic,* by: *Gene McKissic,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Clementine Infante,* Asst. Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge. Appellant Elmer Ramey was convicted by a jury of delivery of a controlled substance, possession of a controlled substance with intent to deliver, possession of drug paraphernalia, operating a drug premises, and conspiracy to deliver marijuana. Appellant was sentenced to nine years each on the delivery, possession with intent to deliver, and possession of drug paraphernalia convictions, and to six years each on the operating a drug premises and conspiracy to deliver convictions, with the sentences to run consecutively. The court suspended

imposition of sentence on counts three and five, for a total sentence of 39 years imprisonment, with 15 years suspended.

Appellant raised three points on appeal: (1) the trial court erred in denying appellant's motion to suppress evidence seized pursuant to a nighttime search warrant; (2) the evidence was insufficient to sustain the convictions; and (3) the trial court erred in denying appellant's motion for mistrial. We find there was sufficient evidence to sustain appellant's convictions. However, we agree with appellant's contentions that the affidavit lacked probable cause to support a nighttime search, and that the evidence seized should have been suppressed. Accordingly, we affirm in part and reverse and remand in part.

Pursuant to *Harris* v. *State*, 284 Ark. 247, 681 S.W.2d 334, we first address appellant's challenge to the sufficiency of the evidence prior to consideration of any alleged trial error. In a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the appellee, and affirm the conviction if there is substantial evidence to support it. *Hutcherson* v. *State*, 34 Ark. App. 113, 806 S.W.2d 29 (1991). In making our review, we do not weigh the evidence favorable to the State against any conflicting evidence favorable to the accused. *Bargery* v. *State*, 37 Ark. App. 118, 825 S.W.2d 831 (1992). In determining whether there is substantial evidence to support the jury's verdict, it is permissible to consider only the testimony that tends to support the verdict of guilt. *Franklin* v. *State*, 311 Ark. 601, 845 S.W.2d 525 (1993). We may even consider evidence which may have been erroneously admitted. *Burkett* v. *State*, 40 Ark. App. 151, 842 S.W.2d 857 (1992).

The evidence viewed in the light most favorable to the State shows that the Camden police had received information about alleged drug dealing occurring around appellant's home at 203 Midland Street. In January of 1991, Officer Poole and Sergeant Vaughan conducted an undercover investigation in which the Ramey residence was telephoned and a marijuana purchase arranged. Jeff Wilkins, the informant, was instructed to go to a grocery store and call again. He was then instructed to go to a club near appellant's home. He was met at the club by Rod Ramey, who is appellant's son, and Tom Henderson. Henderson handed Wilkins three or four bags of marijuana contained in sandwich-

type plastic bags, for which Wilkins gave Henderson $130. Henderson and Ramey were subsequently arrested and some of the marked buy money was found in the possession of each. Pursuant to a search warrant, appellant's home at 203 Midland was searched and plastic bags and two sets of scales were seized. After Henderson was arrested, he made a statement to police in which he said that he sold marijuana for appellant and that he and Rod obtained their marijuana from appellant. He also said that appellant obtained his marijuana from El Dorado, and that Rod would hide the marijuana somewhere in the woods. At trial Henderson denied having made these statements.

Officers continued to conduct surveillance activities around appellant's home for approximately two more months, during which time they observed a pattern of activity whereby individuals would make a call from a pay phone, proceed to Midland Street, where appellant's house was located, drive slowly by the Ramey residence, continue up the street, and come back and stop either in front of appellant's house or down the street from it at an intersection. Either Rod Ramey or Abraham Minor (who is appellant's nephew) would approach the car, then return to the front of the house. Although appellant was not seen during the surveillance, his work truck, car, or both were sometimes seen at the house during surveillance.

On March 14, 1991, officers observed someone drive his car slowly by the Ramey residence, then hit his brake lights. Rod Ramey and Abraham Minor were seen at the house, but appellant was not. The vehicle proceeded to the intersection past the house, where it was met by Abraham Minor, and an exchange took place. After the car left, officers stopped the vehicle, which was driven by Michael Hooker. Hooker gave the officer a bag of marijuana and said he had purchased it from Abraham Minor.

The officers obtained a search warrant, which was issued at approximately 9:30 p.m. and which provided that the search could be conducted between the hours of 8:00 p.m. and 6:00 a.m. because the objects to be seized were in danger of imminent removal. The search was conducted at approximately 10:30 p.m. Appellant was present at the time of the search, as were Rod Ramey and Abraham Minor.

When the police arrived, Lt. Harrison and Sgt. McCann saw

appellant running to the carport. Lt. Harrison yelled for appellant to stop, but appellant continued into the house. As Lt. Harrison followed him in, appellant reached for the telephone. Appellant was handcuffed and arrested, along with Rod Ramey and Abraham Minor.

A bag of marijuana was found in the pocket of Abraham Minor, who was sitting on the front porch of appellant's house when the officers arrived. Minor's billfold and W-2 income tax return form were found inside the house. Appellant had over $3000 cash and some food stamps on his person. Also seized were a set of triple-beam scales, around five or six hundred plastic bags in various sizes, some rolling papers, and a .22 caliber rifle, which was found under the living room couch.

The three men were taken to the police station. While the officers continued to search the house, telephone calls began coming in from people who wanted to purchase drugs. Several people came to the residence to purchase drugs and were arrested and testified at appellant's trial. David Hathcoat testified that he had been to appellant's house to purchase marijuana two or three times within the past two months. David Atkinson testified that on March 14, 1991, he went to appellant's house for the purpose of purchasing drugs, and that he had been there about two times a week in the past for that purpose. He stated that the marijuana was always packaged in a "baggie." Chris Bates also testified that he had bought marijuana from Minor in the past by going to the vicinity of appellant's home, and that the drugs were packaged in a "baggie."

In a statement to the police, Thomas Henderson said that the police arrived too early the night of March 14; appellant was going to El Dorado to pick up marijuana about 30 minutes later. Roy Magby, a former co-worker of appellant, testified that he had purchased marijuana from appellant on several occasions. Specifically, he said he bought marijuana from appellant in January of 1991 by calling appellant on the telephone, then going to his house. Magby said that the marijuana was packaged in a gallon Ziplock bag and that he weighed it on the scales in appellant's kitchen.

Appellant contends that his conviction for conspiracy to delivery marijuana is not supported by substantial evidence.

"Deliver" means the actual, constructive, or attempted transfer from one person to another in exchange for money or anything of value, whether or not there is an agency relationship. Ark. Code Ann. § 5-64-101 (Supp. 1991). Arkansas Code Annotated § 5-3-401 (1987) provides that:

> A person conspires to commit an offense if with the purpose of promoting or facilitating the commission of any criminal offense:
>
> (1) He agrees with another person or persons:
>
> (A) That one (1) or more of them will engage in conduct that constitutes that offense; or
>
> (B) That he will aid in the planning or commission of that criminal offense; and
>
> (2) He or another person with whom he conspires does any overt act in pursuance of the conspiracy.

In his statement to the police, Thomas Henderson said that Rod Ramey got his marijuana from appellant, and that appellant bought "quarters" of marijuana from El Dorado. Henderson also stated that appellant asked Henderson to sell marijuana for him and that appellant had other people selling for him. After appellant had been taken to the police station the night of the search, calls continued to come in to appellant's house from people wanting to purchase drugs. Several people came to the house for that purpose and were arrested. Two of them testified at trial that they had bought marijuana from someone at appellant's house on several occasions. We hold there was sufficient evidence to find that appellant engaged in a conspiracy to deliver marijuana.

Appellant was also charged with the offense of operating a drug premises by maintaining or keeping a premises or structure in violation of the Arkansas Controlled Substances Act by storing, keeping, and distributing illegal controlled substances in and from his residence. Appellant contends his conviction for operating a drug premises is not supported by substantial evidence.

Arkansas Code Annotated § 5-64-402(a)(3) (1987) pro-

vides that it is unlawful for any person to knowingly keep or maintain any store, shop, warehouse, dwelling, building, vehicle, boat, aircraft, or other structure or place, which is resorted to by persons using controlled substances in violation of the Controlled Substances Act for the purposes of using these substances, or which is used for keeping them in violation of the act. A person acts knowingly with respect to his conduct or the attendant circumstances when he is aware that his conduct is of that nature or that such circumstances exist. Ark. Code Ann. § 5-2-202(2) (1987).

The evidence shows that the Camden police had received complaints about alleged drug dealing going on around appellant's home, and that their surveillance had revealed a pattern whereby people would make arrangements then drive by appellant's home to purchase drugs. The night of the search several people called or came by appellant's house for the purpose of purchasing drugs, and some stated they had done so several times in the past. Roy Magby testified that he had purchased marijuana from appellant's residence. Large quantities of plastic bags and triple-beam scales were found in the house. We find there was sufficient evidence to support appellant's conviction for operating a drug premises.

Appellant also contends his conviction for possession of drug paraphernalia is not supported by substantial evidence. Arkansas Code Annotated § 5-64-403(c)(1) (1987) provides that it is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of the Controlled Substances Act. Arkansas Code Annotated § 5-64-101(v)(12) (Supp. 1991) sets forth the factors to be considered in determining whether an object is drug paraphernalia:

> In determining whether an object is drug paraphernalia, a court or other authority should consider, in addition to all other logically relevant factors, the following:

> (1) Statements by an owner or by anyone in control of the object concerning its use;

(2) Prior convictions, if any, of an owner, or of anyone in control of the object, under any state or federal law relating to any controlled substance;

(3) The proximity of the object, in time and space, to direct violation of subchapters 1-6 of this chapter;

(4) The proximity of the object to controlled substances;

(5) The existence of any residue of controlled substances on the object;

(6) Direct or circumstantial evidence of the intent of any owner, or of anyone in control of the object, to deliver it to persons whom he knows, or should reasonably know, intend to use the object to facilitate a violation of subchapters 1-6 of this chapter; the innocence of an owner, or of anyone in control of the object, as to a direct violation of subchapters 1-6 of this chapter shall not prevent a finding that the object is intended for use, or designed for use, as drug paraphernalia;

(7) Instructions, oral or written, provided with the object concerning its use;

(8) Descriptive materials accompanying the object which explain or depict its use;

(9) National and local advertising concerning its use;

(10) The manner in which the object is displayed for sale;

(11) Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

(12) Direct or circumstantial evidence of the ratio of sales of the objects to the total sales of the business enterprise;

(13) The existence and scope of legitimate uses for the object in the community; and

(14) Expert testimony concerning its use.

■ During the search of appellant's home, the police seized several hundred plastic bags, ranging from sandwich-sized to gallon-sized; triple-beam scales; dietary scales; and rolling papers. The State offered evidence that the scales found in appellant's home are commonly used in the drug industry, and a witness testified that when he purchased marijuana from appellant in January of 1991, it was weighed on scales before the purchase. There was also testimony from three witnesses that the marijuana they bought at the Ramey residence was packaged in plastic bags. Appellant admitted that the rolling papers were used to roll marijuana cigarettes. Based on the foregoing, we find the evidence sufficient to support appellant's conviction for possession of drug paraphernalia.

Appellant was also charged with delivery of a controlled substance (marijuana), the information stating that appellant committed the offense by "delivering a quantity of marijuana into the hands of a Phillip Michael Hooker, Gary Hooker, and Harold Trueax in exchange for a monetary consideration. Elmer Ramey acted as an accomplice to Rod Ramey and Abraham Minor." "Delivery" is defined as "the actual, constructive, or attempted transfer from one person to another of a controlled substance or counterfeit substance in exchange for money or anything of value." Ark. Code Ann. § 5-64-101(f) (Supp. 1991). Arkansas Code Annotated § 5-2-403(a)(1) and (2) (1987) provides that a person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, he (1) solicits, advises, encourages, or coerces the other person to commit it, or (2) aids, agrees to aid, or attempts to aid the other person in planning or committing it.

■ There was testimony that Michael Hooker purchased marijuana from Abraham Minor after driving by appellant's house and hitting his brake lights. There was testimony that Rod Ramey got his marijuana from appellant and that appellant had other people selling for him. According to the testimony of several witnesses, drugs were being sold from appellant's home on a regular basis. We find there was sufficient evidence to support appellant's conviction for delivery.

■■ Appellant was also convicted of possession with intent to deliver. Actual or physical possession is not required in

order to sustain a conviction for possession of a controlled substance. *Nowden* v. *State*, 31 Ark. App. 266, 792 S.W.2d 621 (1990). In *Parette* v. *State*, 301 Ark. 607, 786 S.W.2d 817 (1990), the supreme court said:

> Constructive possession may be implied where the contraband is found in a place immediately and exclusively accessible to the defendant and subject to his control. Where, however, there is joint occupancy of premises, then some additional factor must be present linking the accused to the contraband. The state must prove that the accused exercised care, control and management over the contraband and that the accused knew that it was in fact contraband.

301 Ark. 607 at 616. The State agreed there was no actual possession, but contended appellant was in constructive possession of the drugs found on Abraham Minor. We agree with the State's contention that considering all the evidence of drug trafficking, it was reasonable for the jury to conclude that appellant controlled or had the right to control the drugs found on Abraham Minor. The evidence was sufficient to support the conviction of possession with intent to deliver.

Appellant also argues that the trial court erred in denying his motion to suppress evidence seized pursuant to a nighttime search. Because we agree with appellant that the affidavit lacked probable cause to support a nighttime search, we reverse and remand on this issue.

■■ It is well-settled that an affidavit for a search warrant must set out facts showing reasonable cause to believe that circumstances exist that justify a nighttime search. *State* v. *Martinez*, 306 Ark. 353, 811 S.W.2d 319 (1991). Ark. R. Crim. P. 13.2 provides:

> (c) Except as hereafter provided, the search warrant shall provide that it be executed between the hours of six a.m. and eight p.m., and within a reasonable time, not to exceed sixty (60) days. Upon a finding by the issuing judicial officer of reasonable cause to believe that:
>
> (i) the place to be searched is difficult of speedy access; or

(ii) the objects to be seized are in danger of imminent removal; or

(iii) the warrant can only be safely or successfully executed at nighttime or under circumstances the occurrence of which is difficult to predict with accuracy;

the issuing judicial officer may, by appropriate provision in the warrant, authorize its execution at any time, day or night, and within a reasonable time not to exceed sixty (60) days from the date of issuance.

When reviewing a trial court's ruling on a motion to suppress evidence because of an alleged insufficiency in the affidavit, we make an independent determination based upon the totality of the circumstances and reverse the trial court's ruling only if it is clearly against the preponderance of the evidence. *Coleman* v. *State*, 308 Ark. 631, 826 S.W.2d 273 (1992).

The affidavit is dated March 14, 1991, and recites that in January of 1991, officers purchased marijuana from Thomas Henderson and Rod Ramey. Telephone calls setting up the buy were arranged by calling 203 Midland Street. The affidavit further provides that since January of 1991, law enforcement officers had received several complaints about alleged drug transactions going on in front of the house at 203 Midland Street. Surveillance was conducted, which revealed a pattern of people meeting with Rod Ramey, Abraham Minor, or Thomas Henderson after driving in front of the Ramey residence. The meetings were suspected to be for the purpose of purchasing drugs. The affidavit goes on to recite the details of the delivery to the Hookers and Trueax, and states that they said they had bought from Ramey, Minor, and Henderson on approximately 25 occasions.

Neither the affidavit nor the sworn testimony set out facts showing reasonable cause for the issuing judge to have found that any of the required circumstances had been met for a nighttime search. A conclusory statement was made that the drugs to be seized were in danger of imminent removal, but no facts were stated to support this conclusion. The officers merely described the sales that had been observed thus far. We therefore hold that it was error for the nighttime search warrant to have been issued.

██ Pursuant to Ark. R. Crim. P. 16(c), a motion to suppress evidence shall be granted only if the court finds that the violation upon which it is based was substantial. In *Hall* v. *State*, 302 Ark. 341, 789 S.W.2d 456 (1990), the supreme court found that the issuance of a nighttime search warrant was in error and the violation was substantial, stating, "[t]he nighttime intrusion into a private home is the violation of an important interest." The search in *Hall* occurred between 1:00 a.m. and 3:00 a.m. In *Martinez, supra*, the supreme court said, "we hold the intrusion into appellee's home, which began at approximately 9:00 p.m. and continued through 4:00 p.m. the next day, was a substantial violation of our rules." The search warrant in this case was executed somewhere between 10:15 and 10:30 p.m. at appellant's home. We find a substantial violation occurred and accordingly reverse and remand for proceedings not inconsistent with this opinion.

Appellant's third point of error concerns a motion for mistrial based upon a prospective juror's statements during voir dire. Because we feel that the issue is not likely to occur on retrial, we need not address it. *See Hill* v. *State*, 33 Ark. 135 803 S.W.2d 935 (1991).

Affirmed in part; reversed and remanded in part.

JENNINGS, C.J., and COOPER, J., agree.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
AUGUST 25, 1993

863 S.W.2d 839

*Cross, Kearney & McKissic*, by: *Gene McKissic*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clementine Infante*, Asst. Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge. The State has filed a petition for rehearing and motion for clarification following our decision to reverse appellant's convictions in the trial court. We held that a search warrant involved in this case was invalid because it was not supported by any proof justifying a nighttime search.

The central argument made by the State in support of its petition for rehearing is that neither the parties, nor the trial court, addressed the nighttime search validity of the search warrant. The State also argues that if appellant had raised this issue in the trial court it would have offered into evidence a tape recording made when the warrant was issued which "clearly sets out particularized facts" and established probable cause for a nighttime search.

The record on appeal included a motion filed by the appellant to quash search warrant and to suppress evidence. This motion contained the following paragraph:

15. That such search warrant was issued and executed after 8:00 o'clock p.m. with a finding by the court that contraband which was the object of the search was in danger of being removed, but the affidavits recites no facts in support of these findings, that such finding is in violation of Rule 13.2(c) and subsections of the Arkansas Rules of Criminal Procedure.

This motion bears a certificate by appellant's attorney certifying that a copy was mailed to a deputy prosecutor on August 29, 1991. The State filed a response to the motion on September 23, 1991, and a suppression hearing was held on October 16, 1991. The State was represented at this hearing by two deputy prosecuting attorneys, one of whom was the deputy who signed the response to appellant's motion to quash and suppress.

At the suppression hearing the State played a cassette tape into the record and introduced the tape as an exhibit. This tape contained the testimony of Officers Linda Law and Sylvester Smith which was given before the judge who issued the nighttime search warrant. Officer Linda Law also testified at the suppression hearing and was cross-examined by appellant's counsel

about why it was necessary to have a nighttime search. The trial judge commented at the conclusion of the hearing that the hearing had been held for the purpose of determining whether the evidence that was seized "should be suppressed in accordance with the defendant's motion to suppress." The trial court then ruled that the motion to suppress would be denied.

The State's representation that appellant never raised the issue of the nighttime search aspect of the search warrant is not correct. The State's representations that it was not given notice of this issue, nor did it have the opportunity to make a timely record of the tape recording, which was made when the search warrant was issued, are not correct. The State's representation that it did not offer into evidence this tape recording is not correct. The State's representation that the trial court never ruled on this issue is not correct. The State owes the court a duty to not misstate the facts, even when it is disappointed by a decision of this court.

■ We are not persuaded that a rehearing is warranted and deny the State's petition for rehearing.

As to the State's motion for clarification, we affirmed the trial court's determination that there was sufficient evidence to support appellant's convictions, but we found error in the court's denial of appellant's motion to suppress. Consequently, we reversed all of these convictions. This clarification should remove any uncertainty about our decision on this appeal.