Marcus Antonio FRANKLIN v. STATE of Arkansas

CA CR 97-486                                        962 S.W.2d 370

Court of Appeals of Arkansas
Divisions I and IV
Opinion delivered January 28, 1998

*Bill Luppen*, for appellant.

*Winston Bryant*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, Asst. Att'y Gen., for appellee.

ANDREE LAYTON ROAF, Judge. Appellant, Marcus Antonio Franklin, was convicted in a bench trial of possession of a controlled substance with intent to deliver and maintaining a drug premises. His sole point on appeal is that there is insufficient evidence to sustain the convictions because there is no evidence linking him to drugs found in a house in which he was a joint occupant. We agree and reverse both convictions.

Franklin was charged with possession of a controlled substance with intent to deliver and maintaining a drug premises. Two Little Rock detectives testified at his bench trial on the charges. Detective David Green testified that he assisted in executing a search and seizure warrant at a residence in College Station and that there were two people present at this house, Franklin and his co-defendant, Tyrone Johnson. Detective Green further testified that he found cocaine hidden under a dog house in the back yard, and that there were three dogs chained in the yard.

Detective Kevin Tindle testified that on a prior, unspecified date, he had made a controlled narcotics purchase from the residence, but that he could not see the people during the sale and could not say that Franklin was involved. Detective Tindle stated that he also participated in the search and seizure, and located an off-white, rock-like substance in the house hidden under a piece of carpet in the southeast bedroom. He testified that no one was found in that room and that Franklin was found asleep in the northeast bedroom. He further testified that he found no drugs in Franklin's room, on his person, or in his possession. The police did not find drugs or paraphernalia in either of the two cars that were parked outside, and found no paperwork having either the occupant's or the owner's name.

Franklin's father, Lewis Franklin, testified that he owned the house and that he was aware that dogs were on the premises. He said that the dogs were not Franklin's and that Franklin was afraid of dogs and did not like them. He also stated that Johnson and Franklin were living in the house and that they sometimes paid rent. At the conclusion of the trial, Franklin was convicted of both charges and was sentenced to serve forty months in the Arkansas Department of Correction. He appeals from both convictions.

█ On appeal, Franklin argues that the trial court erred in failing to grant his motion for directed verdict based upon the insufficiency of the evidence. Although Franklin's motion for directed verdict challenged the sufficiency of the evidence only for the charge of possession, a motion for directed verdict is not required in a bench trial to preserve for appeal the issue of sufficiency of the evidence. *Mackey v. State*, 56 Ark. App. 164, 939 S.W.2d 851 (1997). Consequently, we may consider the merits of his appeal of both convictions.

Franklin argues that because joint occupancy was established, the State must prove some additional link between him and the cocaine that was found hidden in the bedroom or under the dog house. He contends that the State failed to do so because there was no evidence that he had control over the narcotics or even knew that drugs were present. He argues that he was not found in the bedroom where the cocaine was discovered and that he did not own the dogs. He also argues that there was no evidence that he acted suspiciously, had made any previous sales of illegal drugs, or made any incriminating statements which would indicate that he had knowledge of the cocaine, and adds that cocaine was not found in common areas throughout the house or in plain view.

The State counters that the large quantity of narcotics found in the house and under the dog house, 10.502 grams, Franklin's father's ownership of the house, and the fact that a drug sale had previously occurred at the residence, constitute substantial evidence linking Franklin to the contraband. We do not agree.

██ In order to sustain a conviction for possession of a controlled substance, the State need not prove that the accused

had actual physical possession of the controlled substance. *White v. State*, 47 Ark. App. 127, 886 S.W.2d 876 (1994). Constructive possession, which is control or right to control the contraband, is sufficient. *Osborne v. State*, 278 Ark. 45, 643 S.W.2d 251 (1982). Constructive possession can be implied where the contraband is found in a place immediately and exclusively accessible to the defendant and subject to his control. *Id.*

■ Constructive possession can also be inferred when the controlled substance is in the joint control of the accused and another. *White, supra.* However, joint occupancy alone is not sufficient to establish possession or joint possession; there must be some additional factor linking the accused to the contraband. *White, supra.* In such cases, the State must prove two additional elements: (1) that the accused exercised care, control, and management over the contraband and (2) that the accused knew the matter possessed was contraband. *Darrough v. State*, 322 Ark. 251, 908 S.W.2d 325 (1995) (quoting *Plotts v. State*, 297 Ark. 66, 69, 759 S.W.2d 793, 794 (1988)).

Although the State cites a number of joint-occupancy cases in support of its contention that there are sufficient factors linking Franklin to the contraband to support both convictions, it is clear that these authorities may be distinguished from the facts in this case. In *Nichols v. State*, 306 Ark. 417, 815 S.W.2d 382 (1991), the supreme court stated that there was substantial evidence of constructive possession when at the time of the raid Nichols was found seated at the kitchen table of his residence with drugs in plain view on the table in front of him. In *Parette v. State*, 301 Ark. 607, 786 S.W.2d 817 (1990), the court held that there was evidence from which the jury could conclude that the appellant exercised control over marijuana and paraphernalia found in a closet of a home formerly occupied by him and his ex-wife and owned by his father, where his ex-wife testified that he received shipments of marijuana during their marriage and identified drug paraphernalia and other items found with the drugs as belonging to him. Also, a neighbor testified that appellant was quite often at the house after his ex-wife had moved out. In *Gary v. State*, 259 Ark. 510, S.W.2d 230 (1976), there was sufficient evidence that appellant had joint possession of drugs even though he was not

present when his apartment was raided. The appellant admitted that he lived there, the drugs were found in a bedroom closet in which a glove bearing his name was also found, and his personal papers were found in the apartment. Although a joint occupant of the apartment testified that the drugs were his, he also testified that appellant had used heroin from the supply, collected money from a sale of the drugs, and inquired about the drugs after he learned of the search.

In *Ramey v. State*, 42 Ark. App. 242, 857 S.W.2d (1993), the appellant's conviction for maintaining a drug premises was upheld where police found marijuana on a person sitting on appellant's front porch but found no other drugs in the search of appellant's home. However, in response to complaints about drug dealing, the police had conducted a surveillance of the house and had observed drug trafficking there for several months. They found scales and five or six hundred plastic baggies in the house. In addition, several people who had come to the house seeking to buy drugs during the police search testified at appellant's trial that they had bought drugs at the house in the past. In *Sweat v. State*, 25 Ark. App 60, 752 S.W.2d 49 (1988), the court found sufficient linking factors to support a finding that appellant was in constructive possession of marijuana found in his mother's home. The appellant also lived there, was present when the search was conducted, and marijuana was found in common areas of the house, in the refrigerator and on top of the freezer. Also, drug paraphernalia was found on the kitchen table. In addition, an officer testified that he called the house prior to the search, asked for appellant, and when a man came to the phone and was asked about buying some marijuana, "he said he didn't know me."

Clearly, the three factors relied upon by the State, even taken together, fall far short of demonstrating the degree of connection to the contraband or knowledge of its presence found in any of these cases. Consequently, we hold that there is insufficient evidence to support a finding that Franklin was in constructive possession of the drugs, and the conviction for possession of a controlled substance with intent to deliver must be reversed.

Franklin's conviction for maintaining a drug premises must also be reversed. Arkansas Code Annotated section 5-64-402(a)(3) (Repl. 1993) states:

> It is unlawful for any person to . . . *knowingly* keep or maintain any store, shop, warehouse, or other structure or place or premise, which is resorted to by persons for the purpose of *using* or *obtaining these substances* or which is used *for keeping them* in violation of subchapter 1-6 of this chapter.

(Emphasis added.) Franklin contends that there was no evidence presented that he knew that drugs were present, and we agree.

■ Although the State argues in response that there was substantial evidence that Franklin had both knowledge and control of the cocaine found in the house and under the dog house, it relies upon the same authorities advanced in support of the conviction for possession. However, knowledge is an element of the offense of maintaining a drug premises. As pointed out by Franklin, there were no drugs found in plain view, in the common areas of the house, or in the bedroom occupied by Franklin. There were no statements by Franklin or by anyone else suggesting that Franklin knew that drugs were kept in the house, used there, or sold there. In the only case relied upon by the State involving a conviction for maintaining a drug premises, *Ramey, supra*, there was overwhelming evidence and testimony that the appellant's home was used extensively in drug trafficking, including the testimony of several persons who had bought drugs there. Here, there was testimony about only one prior drug sale, with no specific date or even a time frame given for the sale. Thus, there was no evidence that Franklin had knowledge that the drugs were kept, used, or sold at the home.

Reversed and dismissed.

ROBBINS, C.J., NEAL and ROGERS, JJ., agree.

AREY and CRABTREE, JJ., dissent.

D. FRANKLIN AREY, III, Judge, dissenting. I agree that we should reverse appellant's conviction for possession of a controlled

substance. We should affirm the conviction for maintaining a drug premises, because appellant did not argue this point on appeal. Appellant's fleeting references to the conviction cannot be translated into an argument for reversal. We consider only those arguments raised by the parties; we do not reverse a trial court for unargued reasons. *Bousquet v. State*, 59 Ark. App. 54, 953 S.W.2d 894 (1997). Therefore, I dissent from the reversal of appellant's conviction for maintaining a drug premises.

CRABTREE, J., joins.