2010 Ark. App. 658

**Robert PURDIE, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 10–186.**

Court of Appeals of Arkansas.

Oct. 6, 2010.

Jason Lee Horton, Harrelson, Horton & Matterson, P.A., Texarkana, for appellant.

Dustin McDaniel, Atty. Gen., Jake H. Jones, Asst. Atty. Gen., Little Rock, for appellee.

ROBERT J. GLADWIN, Judge.

On November 23, 2009, in Miller County, appellant Robert Purdie was convicted of rape and sentenced to thirty years' imprisonment. He contends that the evidence presented was insufficient for the jury to convict him of rape and that the trial court committed reversible error by allowing testimony as to the credibility of the alleged victim's accusations. We reverse and remand for new trial.

## I. *Statement of Facts*

Purdie was charged with the rape of eight-year-old H.H., who is the daughter of Purdie's former girlfriend. H.H. was at her great aunt's house when the aunt overheard H.H. say that Purdie had touched her privates and had H.H. touch his privates. The aunt reported the girl's statement to H.H.'s mother, who reported the accusation to police.

At Purdie's rape trial, Melissa Stout, a forensic interviewer and counselor at the Texarkana Child Advocacy Center (CAC), testified that she had interviewed H.H., who was able to tell the difference between the boys' and girls' body parts. She videotaped the interview she had with H.H., and as she prepared to review the videotape with the jury and explain the indicators she relied on when making her determination about whether "something did or did not happen," defense counsel objected. The following exchange occurred:

PROSECUTOR: Okay. So if you were shown a portion of that videotape, could you talk to us and show us, would it help you explain by what you mean by those indicators?

WITNESS: Yes, sir.

PROSECUTOR: Okay.

DEFENSE COUNSEL: Can we approach just a second?

THE COURT: Yes.

DEFENSE COUNSEL: Make sure I'm getting Mr. Jones's question correct. Are you asking her what indicators she observed that leads her to believe she is being truthful?

PROSECUTOR: Uh-huh.

DEFENSE COUNSEL: Your Honor, at this point I would object. I know she's a forensic interviewer, but the qualifications to determine the credibility of a witness is the juror's responsibility, not an expert witness telling them this is why this girl is credible. An expert witness is supposed to help them with something scientific or technical that they would not normally know in their common life and judge the credibility of something people are going to know in their common life. They don't need an expert to tell them that.

PROSECUTOR: Which an expert witness can, you know, number one, talk about the ultimate issue in a case. Certainly, you know, we believe that we can determine whether or not the witness is being truthful. That is the province of the jury to determine. However, she's an expert asking those questions and showing indicators and determining those indicators as to whether or not a person is being deceptive or has been coached. If you want me to frame it in that term, I'm not going to do that. That would—you know, that's an indicator she may have been coached into saying this.

THE COURT: That would be good. I do think as an expert she has a lot of latitude.

Stout testified extensively about her interview with H.H. She explained the indicators she relied on to interpret the truthfulness of the child's story after each segment of the videotaped interview was played for the jury. The State continued its examination as follows:

PROSECUTOR: Okay. Now, were you—through your whole interview with her and we're going to stop the interview at this point, but through this point, have you observed anything that would lead you to believe she was coached or that she was fabricating?

WITNESS: No.

DEFENSE COUNSEL: Objection, your Honor. That's something for this jury to decide, not this witness.

PROSECUTOR: She can give her opinion as to whether or not she believes that a child was coached or she was fabricating.

THE COURT: I will overrule the objection, but let's be cautious and not invade the right of the jury.

H.H. testified that she had never told her mother about the incidents of rape. She claimed that she was confused when she told Stout that she had told her mother. She said that Purdie put his "privacy" in her "hienee" and that she told him to stop; that Purdie threatened to shoot her brains out if she told; that Purdie forced her to lick his "hienee" and his "privacy"; that yellow stuff came out of Purdie's "privacy" and into her mouth, and it tasted like salt; and that Purdie licked her "hienee," her chest, and her "middle part."

At the close of the evidence, Purdie moved for a directed verdict, and renewed all other objections. The trial court denied his motions, and the jury found Purdie guilty, sentencing him to thirty years' imprisonment. Purdie filed a timely notice of appeal, and this appeal followed.

## II. Sufficiency of the Evidence

A person commits the crime of rape if he "engages in sexual intercourse or deviate sexual activity with another person ... [w]ho is less that fourteen (14) years of age." Ark.Code Ann. § 5–14–

103(a)(1)(3)(A) (Supp.2009). "Deviate sexual activity" is defined in pertinent part as "any act of sexual gratification involving" either the "penetration, however slight, of the anus or mouth of one person by the penis of another person" or the "penetration, however slight, of the labia majora or anus of one person by any body member or foreign instrument manipulated by another person." Ark.Code Ann. § 5–14–101(1)(A), (B) (Supp.2009). In a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the State, considering only that evidence that supports the verdict, and we determine whether the verdict is supported by substantial evidence, which is evidence of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Cox v. State,* 93 Ark. App. 419, 220 S.W.3d 231 (2005).

Purdie first contends that H.H.'s inconsistent testimony created, at the very least, reasonable doubt as to whether he committed the acts for which he was convicted. He does not dispute that she was under fourteen years of age and that he was over eighteen years of age when the acts allegedly transpired. However, he claims that the State failed to prove that he and H.H. engaged in sexual intercourse or deviate sexual activity.

Purdie argues that H.H. initially told the CAC interviewer that she had told her mother about Purdie's conduct on several occasions. She also stated that Purdie's girlfriend's son witnessed what Purdie did to her. However, at trial, the mother denied any knowledge of Purdie's alleged conduct, and H.H. changed her story. The girlfriend's son also denied ever witnessing any misconduct. H.H. claimed at trial that she had made up the word "rape" on the day before she was interviewed at CAC. She further claimed to have guessed what

a condom was when the prosecutor showed her one. Further, H.H. testified that she saw Purdie on top of a boy named Scooby with their clothes pulled down. However, seven-year-old Scooby denied that Purdie had ever taken his clothes off or done anything to him. Finally, H.H. told the CAC interviewer that she was sexually abused every night at midnight, and the sexual-assault nurse testified that there were no signs of anal or vaginal trauma found in her examination of H.H. Purdie claims that, based upon the above inconsistencies, substantial evidence did not exist to convict him of rape.

A rape victim's testimony may constitute substantial evidence to sustain a conviction of rape, even when the victim is a child. *Gatlin v. State,* 320 Ark. 120, 895 S.W.2d 526 (1995). The rape victim's testimony need not be corroborated, nor is scientific evidence required, and the victim's testimony describing penetration is enough for a conviction. *Id.* Even though Purdie denied the allegations of raping H.H., the jury is not required to believe his self-serving testimony. *Sera v. State,* 341 Ark. 415, 17 S.W.3d 61 (2000). Also, although H.H. contradicted her testimony, and although her credibility may have been called into question, the jury was free to believe all or part of her testimony and disbelieve Purdie's assertions. *Butler v. State,* 349 Ark. 252, 82 S.W.3d 152 (2002). Furthermore, while it is true, as Purdie points out, that H.H.'s testimony was at times inconsistent, the issue of a witness's inconsistent statements is a matter of credibility left to the jury's discretion. *Kitchen v. State,* 271 Ark. 1, 607 S.W.2d 345 (1980).

Where the jury as trier of fact has given credence to inconsistent testimony, this court will not reverse unless the testimony is inherently improbable, physically impossible, or so clearly unbelievable

that reasonable minds could not differ thereon. *Kitchen, supra.* None of those three circumstances exists here. In sum, H.H. testified that Purdie committed the crime. There is no requirement of corroboration, and the credibility of the evidence and any inconsistencies therein were for the jury to resolve. The victim's testimony was substantial evidence to support the jury's finding of guilt. The trial court therefore did not err in denying Purdie's motion for directed verdict.

### III. *Evidence Regarding Credibility of Victim's Statement*

#### A. *Admission of Evidence*

Purdie next contends that the trial court committed reversible error by allowing Stout, the forensic examiner, to testify as to the credibility of H.H.'s accusations. Our case law clearly states that we review the admission of expert testimony under an abuse-of-discretion standard. *Miller v. State,* 2010 Ark. 1, 362 S.W.3d 264. In discussing our standard of review for evidentiary rulings, the Arkansas Supreme Court has said that circuit courts have broad discretion and that a circuit court's ruling on the admissibility of evidence will not be reversed absent an abuse of that discretion. *Id.* To qualify as an abuse of discretion, the trial court must have acted improvidently, thoughtlessly, or without due consideration. *Id.* Additionally, this court will not reverse an evidentiary ruling absent a showing of prejudice. *Id.*

Purdie contends that *Cox, supra,* controls, where this court concluded that the trial court committed error in allowing the forensic examiner to testify regarding the victim's credibility. *See Cox,* 93 Ark. App. at 420, 220 S.W.3d at 232. Cox was convicted of raping his nine-year-old stepdaughter. *Id.* Just as H.H. did in this case, the stepdaughter in *Cox* testified as to specific sexual actions Cox made her perform. *Id.* at 420, 220 S.W.3d at 233. Cox first challenged the sufficiency of the evidence, arguing that the inconsistent testimony of the victim was insufficient to support his conviction for rape. *Id.* at 420–21, 220 S.W.3d at 233. As we have done here, this court disagreed, ruling that the uncorroborated testimony of the victim established the elements of the crime. *Id.*

However, we reversed Cox's conviction and remanded the case for a new trial because the trial court permitted a forensic examiner from the Hot Springs Child Advocacy Center to testify that, "I believe the interview tape that the jury has seen to be highly credible," and further that, "I believe her to be credible, as credible as any child I've believed to be credible." *Id.* at 421–22, 220 S.W.3d at 233. Relying on the statement of law pronounced in *Hill v. State,* 337 Ark. 219, 988 S.W.2d 487 (1999), that it is error for the court to permit an expert, in effect, to testify that the victim of a crime is telling the truth, we held that it was error to allow testimony regarding the victim's credibility. *Id.* at 422, 220 S.W.3d at 234. Here, similar to *Cox,* the trial court permitted forensic examiner Stout to testify that, from her observation during H.H.'s interview, she did not find anything that led her to believe that H.H. had been coached or that she fabricated anything, i.e., that H.H. was credible.

The State cites *Hill, supra,* claiming that it is not error to allow direct-examination testimony, when sexual abuse has been alleged, that responds to questions regarding the criteria used in evaluating a child's statement. The State contends that, here, Stout testified about the interview process and the criteria used in evaluating the victim's statement for evidence of coaching or fabrication. She testified that, as a neutral party, she evaluates a child victim with regard to the consistency of

her story throughout the interview and the level of sensory details she is able to relate about the abuse. After the jury was shown a videotape of ₁₉the interview, Stout explained the process and described the consistency of the child's story as well as the sensory details she related.

The State contends that Stout simply concluded her testimony by stating that H.H. did not exhibit any of the indicators she looked for in determining whether a story is coached or fabricated. The State claims further that, here, as in *Hill*, the testimony given by Stout did not comment on the credibility of the victim, rather, her testimony was valid evidence of the interview procedures in general, and, in specific, constituted evidence of the procedures she followed in investigating this case. *See Hill*, 337 Ark. at 224–25, 988 S.W.2d at 491. She testified as a fact witness about the interview process employed in this and similar cases to determine whether a child's allegations warrant an investigation. *See id.* at 225, 988 S.W.2d at 491. The State claims, therefore, that it cannot be said that the trial court abused its discretion in allowing Stout's testimony.

Purdie points out that, in *Hill*, the witness was not an expert, but a fact witness testifying about the department's guidelines. *Hill*, 337 Ark. at 225, 988 S.W.2d at 491. Here, the trial court ruled that Stout was an expert in the field of forensic interviews and counseling. Further, Purdie points out that Stout gave expert testimony that she felt the victim was not coached and that her story was not fabricated. The supreme court's opinion in *Hill* does not tell us what was testified to by the DHS worker therein, but the opinion specifically states,

> In the instant case, Thompson's testimony on direct examination responded to questions regarding the criteria used by the Department in evaluating a child's

statement when sexual abuse has been alleged. Reviewing the witness's testimony, it is our holding that Thompson's statements were not improper but were valid evidence ₁₉of the Department's procedures in general, and, in specific, constituted evidence of the procedures followed in this case by the Department in its investigation. She was not testifying as an expert about hypothetical circumstances but testified as a fact witness about the Department's guidelines employed in this and similar cases to determine whether a child's allegations warrant an investigation. Upon appellant's objections, the court responded that the jury was entitled to understand the State's interview and investigation techniques. The court also indicated that the witness would have to stop short of bolstering the children's testimony. In permitting this testimony, we find no error in the trial court.

*Hill*, 337 Ark. at 224–25, 988 S.W.2d at 490–91.

▮ Relying on *Cox* and *Hill*, we hold that the admission of the forensic examiner's opinion that the victim's testimony was not fabricated or coached was an abuse of discretion.

### B. *Harmless Error Analysis*

▮ Purdie argues that, aside from the expert testimony at issue, the only other evidence introduced was the victim's inconsistent rendition of the events. We do hold, as Purdie claims, that the inconsistent testimony being bolstered by the expert's testimony that the victim was "not fabricating" the events amounts to reversible error. Purdie further contends that the evidence against him was not overwhelming; therefore, the error was not harmless. *See Buford v. State*, 368 Ark. 87, 243 S.W.3d 300 (2006) (where child-abuse expert's opinion testimony on victim's credibility was inadmissible, but er-

ror in admitting such testimony was harmless); *Logan v. State*, 299 Ark. 255, 773 S.W.2d 419 (1989) (held that expert witnesses should not have been permitted to give testimony amounting to opinion that victim was telling truth); *Johnson v. State*, 292 Ark. 632, 732 S.W.2d 817 (1987) (where error in allowing improper opinion testimony, but held harmless in the face of overwhelming evidence); *Cox, supra*, (where evidence found prejudicial because evidence of guilt not overwhelming).

In *Cox*, we concluded that the error was not harmless because the only evidence supporting Cox's conviction consisted of the victim's testimony at trial and her statements to third parties; therefore, the outcome of the trial necessarily turned upon the victim's credibility. *Id.* at 423, 220 S.W.3d at 234. Thus, we reversed and remanded for a new trial. Here, just as in *Cox*, the only evidence supporting Purdie's conviction was H.H.'s inconsistent testimony and the statements H.H. made to third parties. Therefore, the trial court's error was not harmless, and Purdie's case must be reversed and remanded for a new trial.

Reversed and remanded.

GLOVER and ABRAMSON, JJ., agree.