Cite as 2021 Ark. App. 33

# ARKANSAS COURT OF APPEALS

DIVISION III

**No.** CR–20–142

| | | |
|---|---|---|
| | | **Opinion Delivered:** January 27, 2021 |
| DONALD JAMES | APPELLANT | APPEAL FROM THE INDEPENDENCE COUNTY CIRCUIT COURT [NO. 32CR-19-161] |
| V. | | |
| STATE OF ARKANSAS | APPELLEE | HONORABLE TIM WEAVER, JUDGE |
| | | AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Donald Ray James was convicted by an Independence County jury of five counts of rape involving his underage niece, AJ, and was sentenced to a total of one hundred fifty years in the Arkansas Department of Correction. He appeals his convictions, alleging that the trial court committed three evidentiary errors: allowing the testimony of AJ's cousins— MB, BB, and KB—to be admitted in violation of both Rule 404 and Rule 403 of the Arkansas Rules of Evidence and the trial court's exclusion of testimony by AJ's therapist regarding AJ's prior unsubstantiated claims of sexual abuse by her father. Finding there was either no error or that the arguments were not properly preserved, we affirm.

## I. *Factual Background*

James is AJ's uncle.[1] AJ and her brothers spent a lot of time within the James home. At times, they lived with James; at other times, they visited frequently, including overnight stays.[2] Within this family setting, James began exhibiting inappropriate sexual behavior toward AJ when she was in the second or third grade. On numerous occasions, James wore loose clothing that allowed his penis to be exposed. He encouraged AJ and other young females to go skinny-dipping and watched them as they swam naked. He would also lie in bed with AJ and touch her. Eventually, James was making AJ perform oral sex on him and was engaging in both digital and vaginal penetration of AJ. AJ did not tell anyone while the abuse was ongoing because she did not want to break up her family and because James was a stay-at-home parent who took care of her disabled cousin.

In January 2018, AJ was given an assignment by one of her teachers in which she was asked to write an essay about herself. In her essay, AJ described multiple incidents of molestation by her uncle, James. Her teacher reported the allegations, and an investigation ensued.

## II. *Procedural History*

The State charged James with five counts of rape arising from the investigation into AJ's allegations. As a part of its investigation, the State recorded interviews of AJ's cousins, KB and BB, regarding their interactions with James. They reported that James had allegedly

---

[1]AJ's mother and James's wife are sisters.

[2]AJ and her brothers bounced between living with their mother, their father, their step-grandfather, and James. They also spent some time in DHS custody.

touched them inappropriately; had encouraged them to skinny-dip in his swimming pool; and had exposed himself to them. Defense counsel filed a motion in limine to exclude their testimony pursuant to Rules 403 and 404. The State countered that their testimony was admissible pursuant to the pedophile exception to Rule 404. At the pretrial hearing on the motion, the State also indicated that it might introduce similar evidence through another cousin, MB.[3] After hearing the arguments of counsel, the court ruled that the testimony was admissible pursuant to the pedophile exception to Rule 404. The court did not make a specific ruling on the Rule 403 exclusion.

At the same pretrial hearing, the court was informed that James intended to call Jeremiah Dillahey as a witness. Dillahey was AJ's former counselor. During counseling sessions, AJ had disclosed to Dillahey that she had been sexually abused by her father. James intended to introduce this disclosure into evidence as well as evidence that those claims were later investigated and could not be substantiated. The State then objected to James's plan. The court concluded that such testimony was privileged and could not be introduced unless AJ waived the privilege.

### III. *The Trial*

### A. AJ's Testimony

On appeal, James does not attack the sufficiency of the evidence supporting his convictions. We nevertheless set forth the following summary of AJ's testimony as a foundation for this opinion.

---

[3]We note that the written motion in limine did not specifically request the exclusion of any testimony by MB.

AJ testified to five specific acts of rape perpetrated by James. In the summer of 2014, she had attended a cookout/pool party at James's house. During this event, James forced her to perform oral sex on him and digitally penetrated her. During the summer of 2015, James forced AJ to perform oral sex on him on two separate occasions. Both incidents occurred when James would make her play the "how long can you hold your breath game." This game was played in the pool and involved James leaning down and adjusting his shorts to the side so that his penis would hang out. AJ would then hold her breath, go under water, and perform oral sex on him.

On a separate occasion in the summer of 2015, James and AJ went for a four-wheeler ride down by the river. When they got to a field by a waterfall, they stopped. James told her to turn around. He then pulled her pants down and vaginally penetrated her with his penis. While he was assaulting her, he told her, "It's sure tight." When she started to cry, he stopped and called her names.

AJ testified that the fifth act of rape occurred in November 2015. While spending the night at James's house, she awoke to him masturbating. She tried to pretend like she was asleep, but he said, "I know you're awake," and made her perform oral sex on him.

In addition to the testimony concerning the specific acts of rape, AJ also testified about her general interactions with James as well as his interactions with her cousins. AJ testified that on numerous occasions, James would wear loose clothing, intentionally allowing his penis to hang out. She specifically testified to an incident in which she and her cousin, MB, were playing under the kitchen table, and James let his penis hang from his shorts. She described his penis as being uncircumcised.

4

AJ further testified about James's interactions with her and her cousins in the swimming pool. She testified that James would encourage her and her female cousins to skinny-dip and would watch them as they did so. When they asked him to stop, he told them he had changed their diapers and had seen it all before.

Pertaining to her counselor, Jeremiah Dillahey, she admitted that she had previously told him that her father had sexually abused her and that she had lied about the abuse. She claimed that she had done so at James's urging and that he had threatened her.

B. Rule 404(b) Witness Testimony

At trial, eleven-year-old MB testified that James had touched her private spot between her legs on more than one occasion. She specifically described one occasion when she and AJ were in bed under the covers and James touched her "private spot." She also described James's exposing himself to them. She specifically confirmed the exposure incident at the table involving her and AJ.

BB testified that when she was ten or eleven years old, she would visit James, who would encourage her and her female cousins to skinny-dip in his pool She testified that he would then stand at the edge of the pool and watch them swim without their clothes. She also testified that she once observed him sitting on the couch and his shorts were arranged in such a way that his penis was exposed. She further testified that sometimes they would dress up and hold "fashion shows." James would help them pick out the clothes to model and then remain in the room while they changed. She said his actions made her feel uncomfortable.

5

KB testified that James had always been "touchy, feely" and would want to hug her and have her sit on his lap. She claimed he encouraged them to skinny-dip in his pool and would watch them change clothes when they had fashion shows at his house. Like the others, she testified that he would expose his penis by having it hang out of his shorts. She also described one incident in which he inserted a tampon into her vagina.

After hearing all the evidence,[4] the jury convicted James on all five counts of rape. James appeals his convictions alleging that the trial court erred in allowing the testimony of MB, BB, and KB to be admitted into evidence pursuant to both the pedophile exception to Rule 404 of the Arkansas Rules of Evidence and Rule 403. He also claims he should have been allowed to question AJ's counselor regarding AJ's prior unsubstantiated claims of sexual abuse by her father. We discuss each in turn.

II. *Analysis*

A. Rule 404(b) Pedophile Exception

James first argues that the trial court committed reversible error in admitting the testimony of MB, BB, and KB because their testimony did not describe conduct that was sufficiently similar to the crimes allegedly committed. As such, their testimony did not fall within the pedophile exception to Rule 404(b).[5]

---

[4]Multiple other witnesses testified on behalf of the State and the defense. Because their testimony is not at issue and because James does not challenge the sufficiency of the evidence, their testimony is not summarized herein.

[5]We note the State's argument that this issue was not preserved for appeal because James did not sufficiently argue below the lack of similarity between the cousins' testimony and the charged conduct. However, because the trial court clearly decided the issue on the basis of the pedophile exception, we decide the issue on the merits.

As a general rule, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. Ark. R. Evid. 404 (2020). Rule 404(b), however, allows the introduction of such evidence for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Dillard v. State*, 2020 Ark. App. 419. Our courts have also long recognized a "pedophile exception" to Rule 404(b). *See id.* The pedophile exception permits evidence of the defendant's prior similar acts with the same or other children when it is helpful in showing a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship and to prove the depraved instinct of the accused. *Oliver v. State*, 2020 Ark. App. 498, 612 S.W.3d 738. Such evidence not only helps to prove the depraved sexual instinct of the accused but is also admissible to show the familiarity of the parties and antecedent conduct toward one another and to corroborate the testimony of the victim. *Dillard, supra.*

James asserts that the pedophile exception requires a sufficient degree of similarity between the evidence to be introduced and the *charged sexual conduct*. He notes that he was charged with rape and not sexual assault and that AJ's cousins did not describe any vaginal penetration by, or oral sex with, James. As such, their testimony could not fall within the pedophile exception as their accounts were too dissimilar to the rapes that the State alleged he committed against AJ.[6] He claims that MB testified only that he touched her private spot and that he had exposed himself to her, neither of which constitutes rape. BB testified

---

[6]He does not argue a lack of evidence of an "intimate relationship" between the witnesses and James.

7

that he had encouraged her to swim naked and that he had exposed himself to her. Again, this conduct does not constitute rape. Like BB, KB's testimony that he had encouraged her to skinny-dip, exposed himself to her, and watched her change clothes did not constitute rape and thus did not fall within the pedophile exception. As to KB's claim that he helped her insert a tampon into her vagina, he contends there was no evidence that such action was taken for sexual gratification, and therefore his conduct, if true, also did not constitute rape. Because their testimony did not involve any penetration, oral or vaginal, for sexual gratification, it was not significantly similar to rape—the crime for which he was charged—and therefore, did not fall within the pedophile exception.

The admission or rejection of evidence under Rule 404(b) is left to the sound discretion of the trial court. *Dillard, supra.* We will not reverse the trial court's ruling absent a showing of manifest abuse. *Id.* Abuse of discretion is a high threshold that does not simply require error in the trial court's decision but requires that the trial court act improvidently, thoughtlessly, or without due consideration. *Id.* Additionally, prejudice must have resulted. *Ralston v. State*, 2019 Ark. App. 175, 573 S.W.3d 607.

We reject James's contention that these encounters were too dissimilar to fall under the pedophile exception. In this case, the girls testified that James exposed himself to them, that he watched them as they changed and as they swam naked, that he helped one of them insert a tampon, and that he touched one of them inappropriately. The similarities in James's conduct toward MB, BB, and KB, who were of very similar ages at the time, demonstrated a depraved sexual instinct. *See Duvall v. State*, 2018 Ark. App. 155, 544 S.W.3d 106. The admission of this evidence helped to show that James's impulses and behavior were far

outside the expected range of a normal uncle. It further corroborated AJ's claims that James had touched her inappropriately, had exposed himself to her, and had watched her as she changed and as she swam naked. As such, the trial court did not abuse its discretion when it admitted the challenged testimony under the pedophile exception.

## B. Rule 403

James next argues that the trial court erred in failing to exclude the testimony of MB, BB, and KB under Rule 403. Arkansas Rule of Evidence 403 states that, although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Relying on *Efird v. State*, 102 Ark. App. 110, 282 S.W.3d 282 (2008), he argues that because the only evidence of rape was provided by AJ and because the testimony of MB, BB, and KB was not sufficiently similar to the rape allegations, the probative value of their testimony was substantially outweighed by the prejudicial effect it had on the jury.

We do not reach James's Rule 403 arguments because there was not a clear ruling by the trial court on whether the probative value of each witness's testimony to the State's case substantially outweighed the danger of unfair prejudice to him. *See Duvall*, *supra*. An appellant must obtain a ruling on whether Rule 404(b) evidence should have been excluded under Rule 403 to preserve the issue for an appeal. *Hubbard v. State*, 2017 Ark. App. 93, at 9 n.5, 513 S.W.3d 289, 295 n.5; *see also Cluck v. State*, 365 Ark. 166, 175, 226 S.W.3d 780, 787 (2006) (trial court must conduct a probative versus prejudicial weighing with respect to evidence if the defense considers the weighing to be important or legally required in order

9

to preserve the Rule 403 issues for an appeal). Because James failed to obtain a ruling on the Rule 403 arguments he presents here, we do not address them.

## C. Counselor's Testimony

James's final argument involves the trial court's decision to exclude certain testimony by AJ's counselor regarding her prior unsubstantiated allegations of sexual abuse. At the pretrial hearing, James indicated that he intended to call Jeremiah Dillahey, AJ's counselor, to testify about conversations he had with AJ in which she made unsubstantiated rape accusations against her father. The trial court found that such evidence was relevant but that such communications were protected by privilege. At trial, the State objected to Dillahey's testimony, claiming that AJ had not waived the privilege. The court agreed and excluded his testimony.

On appeal, James argues that this was error and that Dillahey should have been allowed to testify, not only about whether AJ had been truthful to him in her disclosures about her father but also to describe the explicit detail of the allegations AJ made against her father. He claims that she waived the privilege by informing her teacher that she had made false allegations of inappropriate touching by her father to her counselor and by testifying at trial that her counselor had asked her if anyone had touched her inappropriately and she admitted lying to him.

The State correctly notes, however, that James failed to make the waiver argument below and failed to proffer the evidence he sought to introduce. We agree. Below, James argued only that the testimony went to AJ's credibility and was relevant. James neither raised his Rule 510 waiver argument below nor obtained a ruling on it before the trial court. As

such, his argument that AJ waived the privilege under Rule 510 has not been preserved for appellate review. *See, e.g., Castrellon v. State*, 2013 Ark. App. 408, at 8, 428 S.W.3d 607, 613. This court will not consider it for the first time on appeal. *Seals v. State*, 2013 Ark. App. 326; *Scroggins v. State*, 2012 Ark. App. 87, 389 S.W.3d 40.

Moreover, any error in the exclusion of this testimony was harmless. James did not proffer the exact details of the expected testimony by Dillahey; rather, he simply claimed that Dillahey would testify that AJ had falsely accused her father of sexual abuse. AJ admitted making the false accusations at trial, and a letter she wrote to her teacher acknowledging the false allegations was admitted into evidence. Other witnesses, including AJ's brother and her aunt (James's wife), also testified to the false accusations. Thus, without more being proffered, there has been no showing of prejudice.

For the foregoing reasons, we affirm.

Affirmed.

GRUBER and VAUGHT, JJ., agree.

*The Law Offices of Watson and Watson, PLLC*, by: *Tim Watson Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.