Cite as 2026 Ark. App. 103

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CR-25-46

| | | |
|---|---|---|
| DE'ANDRE JAMES | | Opinion Delivered February 18, 2026 |
| | APPELLANT | |
| | | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT |
| V. | | [NO. 23CR-23-1052] |
| STATE OF ARKANSAS | | HONORABLE CHARLES E. |
| | APPELLEE | CLAWSON III, JUDGE |
| | | AFFIRMED |

**ROBERT J. GLADWIN, Judge**

Appellant De'Andre James appeals his convictions for trafficking fentanyl and maintaining a drug premises within one thousand feet of a certified drug-free zone. On appeal, James maintains that the circuit court erred by denying his directed-verdict motions because there was insufficient evidence that (1) he exercised dominion, control, or management of the fentanyl; (2) he had knowledge that the pills contained fentanyl; and (3) he knowingly maintained a drug premises within one thousand feet of a certified drug-free zone. Furthermore, James argues that the circuit court abused its discretion by qualifying Investigator Matthew Holland as an expert witness and allowing his testimony in violation of Arkansas Rules of Evidence 401 and 403. We affirm.

I. *Background Facts*

On October 26, 2023, Conway police officers and the drug task force executed a search warrant of a two-bedroom apartment located at 1200 Gist Street. James lived in the apartment with his mother, Lilly Peggy. At the time of the search, James, Ms. Peggy, and two other individuals were present. During the search, officers located James's personal items—including his state identification card, two debit cards bearing his name and address, and Walgreens prescription paperwork bearing his address—in the second bedroom that officers determined was James's room.

Agent Jason McNeil with the 20th Judicial Drug Task Force testified that there were two chests of drawers located in the second bedroom. Inside the top drawer of one of the chest of drawers, officers found three clear plastic bags containing 369 blue and round pills marked "M30." Within the same drawer, there were also 22 white pills in a plastic bag, the Walgreens paperwork, and James's state identification card. Inside the top drawer of the other chest of drawers, the officers found a small bag with approximately 10 light-blue pills and two of James's debit cards. A bag containing $11,500 was found inside the closet of the second bedroom.

The contraband was sent to the state crime laboratory and tested by a forensic chemist, Leah Douglas. Testimony established that the randomly selected blue and M30-marked pills contained fentanyl, acetaminophen, and methimazole. Ms. Douglas also analyzed the other blue oval pills that were found in the second bedroom, which were identified as Xanax; and the 22 white pills, which were identified as oxycodone. Thereafter, the State filed its amended felony information and charged James with trafficking fentanyl.

Furthermore, because the apartment was located less than one thousand feet from Hendrix College—which is a certified drug-free zone—James was charged with maintaining a drug premises in violation of Arkansas Code Annotated section 5-64-402(a)(2) and (b)(2) (Repl. 2024).

The jury trial took place on October 3–4, 2024. The circuit court qualified Investigator Matthew Holland ("Holland") with the Conway Police Department as an expert in fentanyl trafficking and overdoses. Before qualifying Holland as an expert, the circuit court allowed the parties to question him outside the presence of the jurors regarding his qualifications. Holland was qualified over James's objection. Holland testified that the fentanyl process typically begins with the precursor chemicals being shipped from China to drug cartels in Mexico. Then, the chemicals are synthesized into a powder and pressed into tablets, which are smuggled across the border into the United States to the distributors and the "end users." He testified that most of the fentanyl that enters the United States has been scored with an M on one side and a 30 on the other side to look like a legally prescribed oxycodone tablet, which is less dangerous than fentanyl. He explained that a potentially lethal dose of fentanyl is about two milligrams, which is about "the head of a pencil lead."

Moreover, Holland testified that in his opinion, the quantity of the fentanyl found and seized from James's bedroom was not indictive of "an end-user-level" amount. Holland referenced buyers of contraband as "end-user(s)" as opposed to a dealer or distributor. Regarding the value of each fentanyl tablet, Holland testified that it was dependent on the number of tablets purchased by the buyer, estimating that the price ranged from $20 to $35

3

per tablet when purchased individually, while the price ranged from $12 to $20 per tablet when purchased in packages of one hundred tablets. At those estimated prices, Holland opined that the value of the 369 fentanyl tablets seized could be valued somewhere between $3,690 at $10 per tablet to $12,915 at $30 per tablet.

After the State rested, James moved for a directed verdict as to both offenses. Specifically, he maintained that the State failed to set forth sufficient evidence that he exercised dominion or control over the contraband and failed to set forth that he knowingly maintained a drug premises within one thousand feet of Hendrix College. The circuit court denied the motion. James presented no evidence but renewed his directed-verdict motions, which the circuit court again denied. Thereafter, the case was submitted to the jury, and the jury found James guilty of both charges. James was sentenced to forty-five years for trafficking fentanyl and five years for maintaining a drug premises within a certified drug-free zone, with the sentences to run concurrently. James filed a timely notice of appeal; this appeal followed.

## II. *Standard of Review*

A directed-verdict motion is a challenge to the sufficiency of the evidence. *LeFever v. State,* 91 Ark. App. 86, 208 S.W.3d 812 (2005). When the sufficiency of the evidence is challenged, this court considers only the evidence that supports the verdict, viewing the evidence in the light most favorable to the State. *Id.* The test is whether there is substantial evidence to support the verdict, which is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or another. *Id.*

4

Furthermore, challenges to an evidentiary ruling are reviewed under the abuse-of-discretion standard. *Baumann v. State*, 2018 Ark. App. 564, 566 S.W.3d 494. This court will not reverse the circuit court's ruling absent a showing of manifest abuse. *James v. State*, 2021 Ark. App. 33, 616 S.W.3d 267. Abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration—prejudice must have also resulted. *Id.*

## III. *Points on Appeal*

James argues on appeal that (1) there was insufficient evidence to support his convictions, and (2) the circuit court erred by qualifying Investigator Holland as an expert witness and allowing him to testify regarding the dangerousness of fentanyl and the risk of overdose.

## IV. *Discussion*

### A. Sufficiency of the Evidence

First, James maintains that the circuit court erred by denying his directed-verdict motion because the State failed to present sufficient evidence that he exercised dominion, control, or management over the fentanyl and that he knew the pills contained contraband. In response, the State argues that James's challenge to the proof that he knew the pills contained fentanyl is not preserved for appeal because it was not raised in his motion below. We agree. *See Daniels v. State*, 2019 Ark. App. 507, 588 S.W.3d 407 (holding that a party is bound by the nature and scope of arguments made at trial and may not enlarge those grounds

on appeal). However, because James argued below that the evidence was insufficient regarding his control or dominion over the contraband, we address the merits of that argument.

A person commits the offense of trafficking fentanyl if he possesses with the purpose to deliver over one gram or more. Ark. Code Ann. § 5-64-440(b)(2) (Repl. 2024). Guilt can be established without direct evidence; evidence of guilt is not less because it is circumstantial. *Gonzales v. State*, 2019 Ark. App. 600, 589 S.W.3d 505. Circumstantial evidence is substantial when it excludes every reasonable hypothesis consistent with innocence; whether it does so is usually a jury question. *Gibout v. State*, 2024 Ark. App. 568, 702 S.W.3d 404.

Under Arkansas law, possession may be established by proof of actual possession or constructive possession. *Martin v. State*, 2019 Ark. App. 509, 587 S.W.3d 623. Constructive possession is the control of or right to control the contraband. *Id.* Constructive possession may be established by circumstantial evidence and can be inferred when the contraband is found in a place immediately and exclusively accessible to the defendant and subject to his control. *Szczerba v. State*, 2017 Ark. App. 27, 511 S.W.3d 360. Constructive possession can also be inferred when the contraband is in the joint control of the accused and another. *Martin*, 2019 Ark. App. 509, 587 S.W.3d 623. However, joint occupancy alone is not sufficient to establish possession or joint possession; there must be some additional factor linking the accused to the contraband. *Id.* In such cases, the State must prove that the accused exercised care, control, and management over the contraband and that the accused knew the

matter possessed was contraband. *Id.* Control and knowledge can be inferred from the circumstances, such as the proximity of the contraband to the accused, the fact that it is in plain view, and the ownership of the property where the contraband is found. *Id.* Additionally, this court has found that items in a room, such as documents bearing the accused's name, clothing that fits the accused, and the accused's presence in that room, are sufficient proof of constructive possession. *Williams v. State*, 2025 Ark. App. 92, 704 S.W.3d 916.

James's argument on appeal centers on the fact that no one saw him in the bedroom where the contraband was located. However, as set forth above, that is not the requisite standard for constructive possession. Upon review, the appellate court's role is to determine whether the jury resorted to speculation and conjecture in reaching its verdict. *Phillips v. State*, 344 Ark. 453, 40 S.W.3d 778 (2001). Here, officers executed a search warrant of a two-bedroom apartment that was occupied by James and his mother. When the warrant was executed, James, his mother, and two other individuals were present. The officers searched the entire residence, including James's mother's bedroom, and no contraband was found anywhere other than the second bedroom. The officers determined that the second bedroom belonged to James because his personal items were located in the bedroom as well as his Arkansas identification card, two debit cards bearing his name, and a Walgreens prescription bearing his name and address. Furthermore, the 369 blue pills marked "M30" were found in the same drawer in the second bedroom as the Walgreens paperwork and James's Arkansas identification card. The other various pills were found in a different drawer in the

7

second bedroom that also contained two debit cards bearing James's name. Inside the bedroom closet, the officers found a black bag containing $11,500.

The evidence, viewed in the light most favorable to the State, sufficiently links James to the fentanyl found in the apartment. Accordingly, we find that substantial evidence supports the conviction for trafficking fentanyl.

Next, James argues that the circuit court erred by denying his directed-verdict motion for maintaining a drug premises in a certified drug-free zone. Specifically, James argues on appeal that (1) the State failed to present sufficient evidence that he knowingly maintained a drug premises; and (2) the court erred by failing to instruct the jury that, to enhance the conviction, the State was required to prove that he had the culpable mental state.

Arkansas Code Annotated section 5-64-402(a)(2) states that it is unlawful for any person to knowingly maintain any dwelling that is resorted to by a person for the purpose of using or obtaining a controlled substance. Furthermore, section 5-64-402(b)(2) provides that doing so results in a Class B felony if the violation is committed within one thousand feet of a certified drug-free zone. James was charged and convicted of knowingly maintaining a premises for drug activity in violation of section 5-64-402(a)(2) within one thousand feet of Hendrix College—a certified drug-free zone—in violation of section 5-64-402(b)(2).

James contends that under this court's holding in *Franklin v. State*, his conviction should be overturned because the State failed to prove he had knowledge that the contraband was in the apartment and that the contraband belonged to him. 60 Ark. App. 198, 962 S.W.2d 370 (1998). In *Franklin*, this court reversed a conviction for maintaining a

drug premises and held that knowledge is an element of the offense and cannot be inferred from the facts. *Id.* However, this case is factually distinguishable from *Franklin*.

In *Franklin*, the contraband was discovered in a bedroom that was not Franklin's and in the yard under the doghouse of an animal that Franklin did not own. Here, as discussed above, sufficient evidence established that James constructively possessed the contraband. The drugs were found in an apartment that James shared with his mother; he was in the apartment when the search was executed; James's personal items were found in the second bedroom; contraband was found in the same bedroom drawer as James's state identification card and Walgreens prescription; and additional contraband was found in another bedroom drawer in the second bedroom with two debit cards belonging to James. Expert testimony was presented that the significant number of fentanyl pills indicated that they were not purchased by an "end-level user," coupled with the fact that a large amount of cash was found in the second bedroom closet—meaning that the contraband was not hidden or unknown to James. Thus, we find there was sufficient evidence to establish that James knowingly used the second bedroom to maintain the controlled substances for drug activity. *See Williams*, 2025 Ark. App. 252, 704 S.W.3d 916.

Additionally, James argues on appeal that the circuit court erred by failing to instruct the jury that, to enhance the conviction, the State was required to prove that he had the culpable mental state. However, as the State correctly argues, James did not challenge the jury instruction at trial or argue in his directed-verdict motion that the State failed to set forth sufficient evidence as to the enhancement; thus, this argument is not preserved for our

review on appeal. *See, e.g.*, *Vermillion v. State*, 2024 Ark. App. 392, 690 S.W.3d 899; *see also* Ark. R. Crim. P. 33.1.

B. Expert Testimony

James maintains that the circuit court abused its discretion by qualifying Investigator Holland as an expert witness in fentanyl trafficking and overdoses and by allowing his testimony in violation of Arkansas Rules of Evidence 401 and 403. We disagree.

The test for admissibility of expert testimony is whether it will aid the trier of fact in understanding the evidence or in determining a fact in issue. Ark. R. Evid. 702 (2019). An important consideration in determining whether the testimony will aid the trier of fact is whether the issue is beyond the ability of the trier of fact to understand and draw its own conclusions. *E.g.*, *Sullivan v. State*, 2012 Ark. 74, 386 S.W.3d 507. The decision to admit expert testimony is reviewed for abuse of discretion. *Bynum v. State*, 2018 Ark. App. 201, 546 S.W.3d 533. To show that a circuit court abused its discretion, it must be established that the circuit court acted improvidently, thoughtlessly, or without due consideration, thereby causing prejudice. *Id.* A court's evidentiary ruling will not be reversed absent a showing of prejudice. *E.g.*, *Purdie v. State*, 2010 Ark. App. 658, 379 S.W.3d 541.

The circuit court found that Holland's testimony regarding the mechanics and characteristics of fentanyl trafficking was admissible because it was outside the jury's common knowledge and assisted the jury in understanding the trafficking charge. Holland testified, from his experience and training, how fentanyl comes into the United States, how it is made, how the pills are scored, how to identify fentanyl, and what typically constitutes

a lethal dose. Furthermore, Holland testified that the quantity of the pills found was not an "end-user-level" amount, how fentanyl value is determined, and the approximate value of the contraband found in the bedroom. We find that Holland's knowledge and experience was sufficient to assist the jury in understanding the evidence and in determining factual issues, which is the test under Rule 702. Therefore, the circuit court did not abuse its discretion in qualifying Holland as an expert in fentanyl trafficking.

Next, James contends that Holland's testimony regarding fentanyl's potency and the potential for overdose was irrelevant and only served to inflame and prejudice the jury in violation of Arkansas Rules of Evidence 401 and 403. Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Ark. R. Evid. 401. That is not a high bar, and to meet it, evidence need not "prove the entire case or even [resolve] a single issue." *McDaniels v. State*, 2025 Ark. 139, 720 S.W.3d 82. Furthermore, Rule 403 targets a narrow category of evidence–namely that which produces "unfair prejudice." *Id.* at 12, 720 S.W.3d at 90.

As discussed above, Holland described the mechanics and characteristics of fentanyl trafficking, and his testimony was plainly relevant to James's charges. There was also nothing in the record to suggest that Holland's testimony would have led the jury to decide the case on some improper basis. However, even if the circuit court erred by admitting Holland's testimony as to the dangerousness of fentanyl and the potential for overdoses, we agree with the State that the error would have been harmless. Harmless error exists when the evidence of guilt is overwhelming, and the error is slight. *Lawson v. State*, 2024 Ark. 143, 697 S.W.3d

11

529. Testimony regarding the dangerousness of fentanyl does not make the other evidence against James and his guilt more or less credible. Accordingly, we affirm the judgment of the circuit court.

V. *Conclusion*

For the above-stated reasons, we affirm James's convictions and resulting sentences for trafficking fentanyl and maintaining a drug premises within one thousand feet of a certified drug-free zone.

Affirmed.

ABRAMSON and BARRETT, JJ., agree.

*Nicole Gillum, Esquire, PLLC*, by: *Nicole C. Gillum*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.