Cite as 2023 Ark. App. 103

# ARKANSAS COURT OF APPEALS
DIVISION II
No. CR-22-128

| | |
|---|---|
| WILLIAM DANIEL MOSLEY III<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered February 22, 2023<br><br>APPEAL FROM THE COLUMBIA COUNTY CIRCUIT COURT<br>[NO. 14CR-19-307]<br><br>HONORABLE DAVID W. TALLEY, JR., JUDGE<br><br>AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant William Mosley III appeals from the revocation of his probation for the underlying charge of criminal nonsupport, a Class B felony, for which he was sentenced to six years' imprisonment with an additional twelve years' suspended sentence. He argues on appeal that the circuit court erred by revoking his probation because the State failed to present sufficient evidence to support the revocation. We affirm.

Appellant pled guilty to nonsupport totaling more than $25,000, on July 15, 2021. As a result of the plea, appellant was sentenced to five years' probation. The conditions of his probation, filed in open court, required appellant to report to his probation officer, refrain from using drugs, and pay his court ordered fines, fees, and/or restitution at a rate of $30 a month. The sentencing order was filed on August 16. The State filed a petition to revoke appellant's probation on September 28, alleging that appellant had violated the

above-listed terms. According to the petition and accompanying violation report, appellant failed to report to probation on August 31 as directed; and he also failed to report, via phone, on September 14 as directed.[1] It was further alleged that appellant tested positive for methamphetamine on July 19 and that he had failed to pay anything toward his court-ordered obligation. Appellant's revocation hearing took place on October 21.

Tynekia Frazier, appellant's probation officer, testified that she personally went over the terms and conditions of appellant's probation with him on July 19. She stated that when appellant came to see her on July 19, he tested positive for methamphetamine and admitted that he had "smoked a joint the week prior." She said that she gave appellant a verbal warning to stay away from drugs and alcohol and that the rest of his drug tests were negative. She testified that appellant told her that he had not made any payments toward his child-support obligation because he was "waiting on his disability." Frazier stated that appellant failed to report on August 31 because he said that he did not have a ride. She said that she told appellant that it "really wasn't an excuse" because he knew about the appointment in advance. She testified that appellant came to his scheduled September 7 appointment but had to leave to get tested for COVID-19 when he revealed that the person who gave him a ride to the appointment was positive for COVID-19. Frazier said that appellant's test results were negative, but he was to quarantine for a week and contact Frazier by phone on September 14. When appellant failed to contact Frazier as instructed, she unsuccessfully

---

[1]At the time the petition and violation report were prepared on September 21, appellant had not had contact with his probation officer since September 7.

attempted to reach him by calling and texting. She stated that appellant finally sent her a text on September 27 asking when he was supposed to come it, to which she replied September 28. She said that appellant came in as instructed and tested negative for all substances; however, she stated that he still had not made a payment on his child support. Frazier testified that appellant subsequently made a $60 payment on September 30.

On cross-examination, Frazier stated that when appellant contacted her on August 31, he was told to be at her office before 5:00 p.m. She said that appellant was told to "come back" on September 14 "because his results came back negative."[2]

After the State rested, appellant testified. Appellant stated that he did not report to this probation officer on August 31 because he did not have a ride and does not have a driver's license. He said that Frazier told him that not having a ride was not an excuse and not to miss another appointment. He stated that on September 7, someone positive for COVID-19 had given him a ride to his scheduled appointment. He testified that when he informed Frazier of this, he was told to leave immediately and go get tested. He said that he notified Frazier of his negative results that day, and she told him that she "would tell [him] when to come in." He stated that he was under the impression that he had to quarantine for ten days based on what the media and his attorney said. Appellant testified that after his ten days had passed, he was wondering why Frazier had not contacted him, so he contacted her "as soon as [he] thought about it." He stated that Frazier told him to come in the next

_____

[2]Although this was the cross-examination testimony, the direct testimony and the violation report indicate that appellant was to report via phone on September 14.

day. Appellant denied that he admitted smoking methamphetamine a week prior to his initial meeting with Frazier in July or telling Frazier as much. He stated that he did not understand how he was positive for methamphetamine and asked Frazier several times to be retested, but she denied his request. He said that he was current on his payments, having made two payments to cover August and September.

On cross-examination, appellant testified that Frazier was lying about his admission to smoking a week before July 19. However, he conceded that the drug test did show that he was positive for methamphetamine. Appellant also stated that Frazier was lying about him being contacted to report on September 14. He said that Frazier told him that she would contact him and let him know when to report, but she never did. He stated that Frazier told him to quarantine, but she did not tell him how many days he should do so. Appellant admitted that he was able to make a $5000 bond the same day he was arrested. He stated that he had fallen behind on his payments, but he got caught up in late September. Appellant testified, "I was told to pay thirty-dollars [sic] a month at the end of July, so I made my August and my September payment and now I'm current as far as I'm aware of." He agreed that he did not make his payments as ordered, but he stated that he made one $60 payment at the end of September. Appellant testified that he owns a boat, a truck, and a car. He also stated that he owns the trailer house he lives in. He said that he does not work because he is trying to get disability. He testified that he suffers from pain and depression and stays in bed most days.

When questioned by the circuit court, appellant stated that he made his payment toward the end of September.

The circuit court found that appellant was not a credible witness. It further found that appellant failed to report without a reasonable explanation, he tested positive for methamphetamine, and he failed to may payments as ordered, with the first and only payment occurring after sixty days had elapsed. Appellant's probation was revoked, and he was sentenced to six years' imprisonment with an additional twelve years' suspended sentence in the sentencing order filed on November 2. Appellant filed a timely notice of appeal on November 8.

Pursuant to Arkansas Code Annotated section 16-93-308(d),[3] a circuit court may revoke a defendant's probation at any time prior to the expiration of the period of probation if the court finds by a preponderance of the evidence that the defendant has inexcusably failed to comply with the terms or conditions of his probation. The State bears the burden of proving a violation of the terms or conditions by a preponderance of the evidence.[4]

On appeal, we uphold the circuit court's findings unless they are clearly against the preponderance of the evidence.[5] We need proof of only one violation of the conditions of probation to support a revocation, and evidence that is insufficient for a criminal conviction

---

[3](Supp. 2021).

[4]*Johnson v. State*, 2021 Ark. App. 226.

[5]*Id.*

may be sufficient for a revocation because the burdens of proof are different.[6] Because a determination of the preponderance of the evidence turns heavily on questions of credibility and weight to be given to the testimony, the appellate courts defer to the circuit court's superior position in this regard.[7] To sustain a revocation of probation, the State need only show that the defendant committed one violation.[8]

The circuit court found three violations by appellant to support the revocation of his probation, including that he failed to report without a reasonable explanation. According to appellant's conditions of probation, he was to "report as directed to a supervising officer. . . . If you are transferring to another state, you should follow Interstate Compact reporting instructions." Appellant contends that based on the rule of lenity, the word "report" in the conditions of his probation should be construed in appellant's favor to mean physically present. As support for this contention, appellant quotes language from the Interstate Commission for Adult Offender Supervision (ICAOS), which states that reporting instructions "shall include place, date, and time on which the offender is directed to report in the receiving state." However, this argument is not well taken for two reasons. First, as noted in one of the dissents in *Cole v. State*,[9] although it is well settled that criminal statutes should be construed in favor of a defendant, the case law on whether probationary terms

---

[6]*Id.*
[7]*Id.*

[8]*Id.*

[9]2014 Ark. App. 215, 433 S.W.3d 924 (Harrison, J., dissenting).

should be construed the same way is not well developed. And although the dissent urged our supreme court to develop the law on how to treat unclear probation conditions, it has not done so. Second, the reporting language found in ICAOS is not determinative because appellant was not transferring to another state and subject to those provisions. In the petition to revoke appellant's probation, Frazier indicated that appellant failed to report on August 31 and September 14 as directed. In the violation report, Frazier expressed that appellant failed to report by phone on September 14 as he had been directed to do. At the hearing, the circuit court was faced with two testimonies as it related to September 14: Frazier stated that appellant failed to contact her via phone despite being instructed to do so; appellant denied ever being instructed to contact Frazier or report to her on the date in question. The circuit court was in the best position to resolve the conflicting testimony and specifically found that appellant was not credible. Therefore, we hold that the circuit court's decision that appellant failed to report without reasonable explanation is not clearly against the preponderance of the evidence. Accordingly, we affirm.[10]

Affirmed.

THYER and WOOD, JJ., agree.

*Jessica S. Yarbrough*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christopher R. Warthen*, Ass't Att'y Gen., for appellee.

---

[10]Because we affirm on the basis of this violation, we need not address the other two violations found by the circuit court.