Cite as 2025 Ark. App. 108

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CR-24-305

| | |
|---|---|
| ORLANDOUS DE'JAVIS SMITH<br>APPELLANT | Opinion Delivered February 19, 2025<br><br>APPEAL FROM THE CRITTENDEN<br>COUNTY CIRCUIT COURT<br>[NO. 18CR-20-860] |
| V. | |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE DAN RITCHEY, JUDGE<br><br>AFFIRMED |

**WAYMOND M. BROWN, Judge**

Appellant Orlandous Smith appeals from an order of the Crittenden County Circuit Court revoking his suspended imposition of sentence (SIS) for the underlying charge of possession of a firearm by certain persons. He contends that the circuit court committed reversible error by revoking his SIS. We affirm.

The State filed a revocation petition on September 28, 2023, contending that appellant had violated the terms and conditions of his SIS by (1) failing to consistently pay fines, costs, restitution, and fees as directed; (2) failing to live a law-abiding life, be of good behavior, and not violate any state, federal, or municipal law; and (3) committing the offense of possession of a firearm by certain persons, a Class B felony, on or about May 19, 2023, in Crittenden County, Arkansas.

Appellant's revocation hearing took place on February 7, 2024. Ishmael Clay of the West Memphis Police Department testified that on May 19, 2023, he received a call from dispatch to go to 300 Forrest Park Drive on reports of an individual having a gun. He was informed that the individual was wearing a blue t-shirt, blue jeans and blue Jordans and was in a black Kia Sorento with damage to the driver's side. He stated that he made contact with appellant, who admitted living at the address in question. Clay subsequently conducted a compliance check of the residence since appellant was on parole. He testified that he located clothes matching the description he was given lying on the bed in the northeast bedroom. In the top of the bedroom closet was a Glock 19x 9 mm handgun with a loaded tan seventeen-round magazine,[1] an empty thirty-one-round extended-clip magazine, and a Ruger gun box. The box for the Glock was also found in the closet. Additionally, Clay found a utility bill with appellant's name and the Forrest Park address on it, a black and silver scale, and a fifty-round drum magazine containing ammunition next to appellant's wallet along with paperwork from the ADC and Osceola District Count with appellant's name on it. A picture of appellant and a female was also found in the northeast bedroom. A loaded tan Glock magazine was found lying on top of the refrigerator. Clay stated that he never found the Ruger inside the residence. He testified that he did not know who was inside the residence because everyone had been called out of the residence before the search. He stated that appellant denied that any of the weapons and ammunition belonged to him.

---

[1]The magazine was not inside the gun, but beside it.

On cross-examination, Clay testified that there was a child-support paper with appellant's name on it in the closet. He admitted that when he got there, appellant was not wearing the clothes described by dispatch.

Darrius Thompson of the West Memphis Police Department testified that he also was dispatched to 300 Forrest Park Drive because of reports that a subject was outside with a gun. He said he was given a description of the subject and informed that the subject was in a black Kia. He stated that he knocked on the door and that Jazmine Lewis, appellant's girlfriend, opened the door. He testified that he asked appellant to step outside. He stated that Lewis said she owned the Kia in front of the residence. On cross-examination, Thompson said that Lewis and appellant were the only persons in the residence.

Patricia Joplin of the Crittenden County Sheriff's Office testified that she is the fines, fees, and restitution clerk. She stated that appellant had not made any payments and still had a balance of $790. She said that she had made notations March 10, 2022, October 12, 2023, December 13, 2023, and January 9, 2024, that appellant had had no communication and had made no payments. On cross-examination, Joplin testified that someone had made a payment on appellant's behalf just recently and that it showed a balance of "a hundred-and-something dollars." Appellant introduced a receipt showing a balance of $190 since payment had been made on February 5.

Appellant unsuccessfully moved for a directed verdict at the conclusion of the State's case.

3

Lewis testified that she and appellant have a two-year-old child. She stated that on the date in question, she lived at 300 Forrest Park Drive with her four children and her brother. She said that appellant lived with his aunt at another address. She stated that when the police came to her residence on May 19, 2023, she was there with two of her children, appellant, and her sister.[2] She said that she, her children, and her sister were walking outside when they came in contact with the police. She stated that she told the officers that the Kia Sorento belonged to her. She said that the police had her call appellant outside, and they subsequently conducted a search of her residence. She said that she and appellant were both arrested. She testified that the northeast bedroom is her bedroom. She stated that the Glock found in the bedroom closet belonged to her and that the child-support documents were her copy. She said that on the date in question, her adult brother lived there, his size is similar to appellant's, and they could wear the same type of clothes. Lewis testified that appellant's wallet was in the closet because they had had sex that day and that is how it "had ended up getting there." She said that the apartment was in her name but admitted that the gas bill was in appellant's name because neither she nor her brother could get it in their names. She stated that appellant put the gas bill in his name to benefit her and their child. Lewis stated that the gun and ammunition all belonged to her.

On cross-examination, Lewis stated that appellant's wallet was at her residence on May 19; however, she denied having any knowledge about his probation and parole papers.

---

[2]Lewis referenced the other female as both her sister and her sister-in-law. For purposes of this appeal, she will be referred to as her sister.

She said that the child-support papers with appellant's name on them were her copies. She stated that the men's clothes found in her room belonged to her brother and that they were moving and washing clothes, so that is why they were in her room and not her brother's room. She testified that the magazines, including the fifty-round drum, belonged to her. She also said that she had purchased a Ruger.

Upon questioning by the court, Lewis stated that she had never fired the Glock or any pistol. She said that she purchased the weapons for protection because she has four children. She stated that she pawned the Ruger. She said that the clothes were on her bed because she had washed them the day before. She stated that her brother had been arrested the night before, so he was not present when the police came and searched the residence. She said that she and appellant had just made it to her apartment right before the police arrived.

Appellant testified that on May 19, 2023, he lived at 113 North Avalon in West Memphis because he was on parole at that address. He stated that he lived with his aunt and his children. He denied living at 300 Forrest Park Drive. He said that he has a child with Lewis. He stated that he got the gas bill in his name to help Lewis and to make sure his child had hot water and heat. He said that he was in the front room when the police arrived, and then they had him come outside. Appellant stated that he was removed from the property before the search was conducted. He denied that the gun or magazines belonged to him. He stated that he did not even know Lewis had the extended magazines. He stated that the child-support letter was Lewis's copy. He said that when he was arrested, he was

wearing a white t-shirt, black and gray True Religion jeans, and some Nike slides. He denied having any clothes at Lewis's residence or changing clothes when the police knocked.

On cross-examination, appellant admitted that pictures showed both his wallet and his probation and parole paperwork in the closet next to the fifty-round drum. However, he stated that he did not put them there. He also admitted that the utility bill in his name and the child-support letter addressed to him were also found in the closet next to a Glock, a magazine, a Glock box, and a Ruger box. Appellant denied ever being in Lewis's closet and said that she must have put his personal items in the closet when they were being intimate. He stated that he did not know whom the clothes and shoes found in Lewis's room belonged to.

Appellant unsuccessfully renewed his motion. The circuit court found that appellant and Lewis were not credible and that appellant was in violation of the terms and conditions of his probation as alleged by the State. Appellant was sentenced to ten years' imprisonment followed by an additional ten years' SIS. The sentencing order was filed on February 7, 2024. Appellant filed a timely notice of appeal on February 22.

On appeal of a revocation, we determine whether the circuit court's findings are clearly against the preponderance of the evidence.[3] To revoke probation or an SIS, the State has the burden of proving that a condition of probation or SIS was violated.[4] Because the

---

[3]*Vail v. State*, 2019 Ark. App. 238.

[4]*Id.*

burden of proof is by a preponderance of the evidence rather than beyond a reasonable doubt, evidence that is insufficient to support a criminal conviction may be sufficient to support a revocation.[5] Because a determination of the preponderance of the evidence turns heavily on questions of credibility and weight to be given to the testimony, the appellate courts defer to the circuit court's superior position in this regard.[6] The State need only prove one violation to sustain a revocation.[7]

When determining whether a defendant is in possession of contraband, the State does not need to prove actual possession; constructive possession is sufficient.[8] To prove constructive possession, the State must establish that the accused exercised "care, control, and management over the contraband."[9] Additionally, there must be some evidence that the accused had knowledge of the presence of the contraband.[10] Control over and knowledge of the contraband can be inferred from the circumstances, such as the fact that it is in plain view, the ownership of the property where the contraband is found, and the accused's

[5]*Id.*

[6]*Mosley v. State*, 2023 Ark. App. 103.

[7]*Vail*, *supra.*

[8]*Franklin v. State*, 60 Ark. App. 198, 201–02, 962 S.W.2d 370, 372 (1998).

[9]*Farris v. State*, 2024 Ark. App. 188, at 8, 686 S.W.3d 602, 608.

[10]*Id.*

suspicious behavior.[11]  There is no requirement that all or even a majority of the linking factors be present to constitute constructive possession of the contraband.[12]

Here, the firearm and magazines were found in a closet where appellant's wallet and other personal information were also found.  Clay testified that appellant told him he lived at the residence and that the clothing matching the description of the alleged perpetrator was found inside the room where the firearm and magazines were found.  A letter addressed to appellant, a gas bill in his name for the residence, his probation and parole paperwork, and his wallet were all found in the closet on the same shelf as the firearm.  Although appellant and Lewis denied that appellant lived at the residence, had changed clothes, or had placed his personal items in the closet, the circuit court was free to believe or disbelieve their testimony.  The circuit court found that neither appellant's nor Lewis's testimony about the firearm was credible and subsequently found that appellant's SIS should be revoked.  A preponderance of the evidence supports the circuit court's revocation.  Accordingly, we affirm.

Since we affirm the revocation based on possession of a firearm by certain persons, we need not address the circuit court's other reasons for the revocation because only one ground is needed to support revocation.[13]

---

[11]*Id.*

[12]*Id.*

[13]*Vail, supra.*

Affirmed.

A<small>BRAMSON</small> and H<small>IXSON</small>, JJ., agree.

*S. Butler Bernard, Jr.*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Christopher R. Warthen*, Ass't Att'y Gen., for appellee.